KEWIN v BOARD OF EDUCATION OF THE MELVINDALE-
NORTHERN ALLEN PARK PUBLIC SCHOOLS

1. Labor Relations—Grievance Procedures—Exhaustion of Reme-
dies—Breach of Duty—Constitutional Claims.

Failure to follow the bargained-for labor grievance mechanism
generally precludes judicial remedies but exhaustion of contrac-
tual grievance procedures by an employee is not required in
such instances as where the union breaches its duty of fair
representation or where constitutional claims are raised.

2. Labor Relations—Exhaustion of Remedies—Federal Doctrines
—State as Employer—Constitutional Claims.

Federal labor law doctrines are not controlling in cases brought
in state courts where the employer is the state or any political
subdivision thereof; therefore, state courts may ordinarily in-
voke their own exhaustion of remedy doctrines in labor dis-
putes involving state or local governmental employers; how-
ever, when local labor disputes also involve rights under the U.
S. Constitution, the invocation of a state exhaustion require-
ment to bar immediate access to the courts may run afoul of
the U. S. Constitution.

3. Labor Relations—Courts—Exhaustion of Remedies—Constitu-
tional Claims—Contract Violation—Same Conduct.

An employee is not required to exhaust his remedies under a
labor agreement before being granted access to the courts to
enforce a constitutional claim where the same conduct is
violative of both the employee's constitutional rights and the
labor contract.

References for Points in Headnotes

[1–3] 48 Am Jur 2d, Labor §§ 1304–1308, 1314.

[4, 6, 7] 48 Am Jur 2d, Labor §§ 26, 26.5 (supp)
    68 Am Jur 2d, Schools § 172.
    Mandatory maternity leave rules or policies for public school teach-
    ers as constituting violation of equal protection clause of Four-
    teenth Amendment to Federal Constitution. 17 ALR Fed 768.

[5] [No reference]

[8] 5 Am Jur 2d, Appeal and Error § 952.

4. LABOR RELATIONS—PREGNANCY—UNILATERAL ACTION—FREEDOM OF
    CHOICE—DUE PROCESS.

    An irrebuttable presumption that female teachers are incapable
    of returning to work until four months after bearing a child
    where imposed upon the teachers unilaterally as a school board
    policy would unnecessarily burden the teachers' freedom of
    choice in marriage and family matters and violate their rights
    to due process.

5. LABOR RELATIONS—COLLECTIVE BARGAINING—COLLECTIVE RIGHTS—
    PERSONAL RIGHTS.

    Federal labor law allows labor unions to bargain away for eco-
    nomic benefit only those rights of an employee which are
    conferred upon all employees collectively to foster the processes
    of bargaining and freedom of choice in marriage and family
    matters is not such a right.

6. LABOR RELATIONS—PREGNANCY—LEAVE OF ABSENCE—TERMINATION
    —NOTICE—PRESUMPTION—WRITTEN NOTICE.

    The probability that a female plaintiff-teacher would have a
    normal gestation period and an uncomplicated post-birth recov-
    ery when combined with a letter written by the plaintiff to the
    school board more than six months before the commencement
    of the school year stating that she wished to return to work as
    soon as legally possible satisfied the notice requirement of her
    employment contract that she give written notice 60 days
    before the commencement of school that she was terminating a
    leave of absence.

7. CONSTITUTIONAL LAW—INFRINGEMENT OF LIBERTY—DAMAGES—
    GOOD FAITH RELIANCE—LESS RESTRICTIVE MEANS—PROTECTED
    INTERESTS.

    Courts should award compensation where there is an infringe-
    ment of constitutionally protected personal interests in liberty
    and a plaintiff has suffered economic loss as a result, and a
    defendant school board's claim of good faith reliance on exist-
    ing law will not bar that compensation where a teacher's
    freedom of choice in marriage and family matters was violated
    by an overly stringent leave of absence for pregnancy require-
    ment and the board had less restrictive means available to it to
    achieve its purposes of administrative efficiency and the dis-
    placement of the relied-upon authority does no violence to any
    interest that is worthy of protection.

8. APPEAL AND ERROR—LABOR RELATIONS—JOINT LIABILITY—FAILURE
    TO CROSS-CLAIM—RIGHTS OF PARTIES.

    A school board's attempt on appeal to impose joint liability upon

a labor union for the unconstitutional infringement of a teacher's personal interests because the union had agreed to bargain away those rights will not be allowed where the board had failed to file a cross-claim below and the court had issued a directed verdict for the union; the fact that the plaintiff-teacher might have appealed the directed verdict issued in favor of the union is of no assistance to the board since one party cannot claim another party's appellate opportunities.

Appeal from Wayne, Charles S. Farmer, J. Submitted October 8, 1975, at Detroit. (Docket No. 21268.) Decided November 12, 1975.

Complaint by Shirla D. Kewin against the Board of Education of the Melvindale-Northern Allen Park Public Schools and the Melvindale Federation of Teachers, Local 1051 AFT, AFL-CIO for damages for the violation of her constitutional rights of due process. Judgment for plaintiff against the board of education only. The board appeals. Affirmed.

*Levin, Levin, Garvett & Dill* (by *Marshall W. Anstandig)* for plaintiff.

*Gazley & Tuchow* (by *Mark W. Gistinger* and *Robert T. Benefiel)* for the Melvindale-Northern Allen Park Board of Education.

*Feiger, Golden & Cousens* (by *Eileen Nowikowski)* for the Melvindale Federation of Teachers.

Before: J. H. GILLIS, P. J., and BRONSON and T. M. BURNS, JJ.

BRONSON, J. Appellant, Board of Education of the Melvindale-Northern Allen Park Public Schools (Board), appeals a judgment of $5,249.23 issued by the Wayne County Circuit Court in favor of plaintiff, a female teacher, as compensation for

the violation of her rights under the due process clause.[1] We affirm the judgment.

The controversy arises out of a collective bargaining contract signed by the Board and defendant-appellee, Melvindale Federation of Teachers, Local 1051 AFT, AFL-CIO (Federation), bargaining agent for plaintiff. The contract contained the following provision:

"A teacher will not be permitted to begin a teaching assignment when she is pregnant prior to the commencement of school. Should pregnancy occur after the commencement of school, a teacher will be required to terminate her teaching duties at the end of the fifth calendar month of pregnancy, or as close to the time when the school program is normally interrupted. (ex. Christmas, end of the semester, Easter). A teacher will furnish a written opinion from a medical doctor as evidence of the time that pregnancy has existed. *Leave will continue for four months following the date of birth of child and the teacher may return only with her physician's written permission.* The Superintendent will notify the teacher of the first position available after the teacher has terminated her leave. Upon written request, one year's extension of leave may be granted by the Board. The Board's decision will be final." (Emphasis added.)

Plaintiff was employed by appellant for the 1969–1970 school year. She first notified the Board in February, 1970 that she was pregnant, and later wrote the school board, March 11, 1970, when she was five months pregnant, stating her desire to return to her job "as soon as legally possible". Plaintiff took a maternity leave of absence commencing with the Easter vacation. She gave birth July 15, 1970 and notified the Board August 19, 1970, that she was prepared to return

[1] US Const, Am XIV.

to work for the September term. She delivered a physician's statement certifying her physical health.

The Board, relying on the maternity leave provisions of the collective bargaining agreement, refused to reinstate her at that time, stating that it had not been four months since she gave birth. She was subsequently offered full-time employment commencing February 1, 1971, which she accepted.

Plaintiff instituted this suit in September, 1971, charging the Board and the Federation with joint liability in having violated, *inter alia,* the Fourteenth Amendment of the United States Constitution.[2] Following a trial without a jury, the Federation moved for and was granted a directed verdict. The trial judge, relying on CLEVELAND BOARD OF EDUCATION v LaFLEUR, 414 US 632; 94 S Ct 791; 39 L Ed 2d 52 (1974), declared that the mandatory maternity leave was unconstitutional and awarded plaintiff damages against the Board, based on lost wages, lost salary increments, and lost hospital insurance premiums.

The Board appeals that judgment on several grounds, those most worthy of consideration being (1) plaintiff failed to exhaust the grievance procedures of the collective bargaining agreement, (2) the Federation, as plaintiff's authorized bargaining representative, waived plaintiff's constitutional rights, (3) plaintiff was bound by and did not comply with the collective bargaining notice provisions applicable to all leaves of absence, (4) appel-

---

[2] Plaintiff's complaint also alleged violations of the equal protection clause of the Michigan Constitution, Const 1963, art 1, § 2, the State Fair Employment Practices Act, MCLA 423.303a; MSA 17.458(3a), and the collective bargaining agreement's anti-discrimination clause, Art V, § A. The judgment below and present appeal are not concerned with these allegations; our analysis is limited to the alleged Fourteenth Amendment violation.

lee Federation must be jointly liable for any judgment based on the unconstitutionality of the collective bargaining agreement.

Plaintiff characterizes this appeal as vexatious, averring that the above issues are without merit. She asks that costs and attorney's fees be imposed on appellant pursuant to GCR 1963, 816.5(2). We will examine the merits of the issues raised by appellant.

## I.

As a preliminary matter, we must determine if plaintiff's complaint was properly before the court. Appellant contends that the grievance procedure in the collective bargaining agreement was not exhausted. Exhaustion of contractual grievance procedures is generally necessary to maintain a suit based on a breach of the collective bargaining agreement. Failure to follow the bargained-for grievance mechanisms precludes judicial remedies,[3] except in certain instances.[4] The trial court decreed that plaintiff's complaint came within an exception to the exhaustion doctrine implied by *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974).[5]

---

[3] *Spencer v Wall Wire Products Co,* 357 Mich 296; 98 NW2d 615 (1959), *Grosse Pointe Farms Police Officers Association v Michigan Employment Relations Commission,* 53 Mich App 173; 218 NW2d 801 (1974).

[4] *E.g.,* no exhaustion required if union breaches duty of fair representation. *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971); *cf., Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967) (under Federal labor law).

[5] *Alexander* allowed an employee to bring a claim under Title VII, 42 USC 2000e *et seq.,* in addition to pursuing a contract claim under the collective bargaining agreement. The court stated that the two claims, while based on the same facts, were derived from legally independent origins. In the present case, the trial judge apparently believed that the U. S. Constitution was an origin of a right independent from the collective bargaining rights. Because it was an independent right, the contract grievance machinery was inapplicable.

We concur in the trial court's holding on this preliminary issue, and we find that the *Alexander* analogy makes sense. However, we can dispose of this issue by simple contract interpretation without deciding if we are required to apply *Alexander*.[6]

The collective bargaining agreement in the present case reads, in pertinent part:

"A grievance is defined as a complaint about *an act or condition* which a teacher conceives to be *contrary to this contract.* If a grievance arises * * * such grievance will be processed pursuant to grievance procedures." Art 12, § A. (Emphasis added.)

The plaintiff's present complaint is that the four-month waiting period, authorized by the contract, is unconstitutional. Her complaint is *not* that the action of the appellant was "contrary to plaintiff's contract", for the action taken was pursuant to the contract. Because the claim is not a grievance as defined by the contract, doctrines of exhaustion of the grievance procedures are irrelevant.

Even if the Board's action could also give rise to a grievance under the contract, the exhaustion

---

[6] We note, in passing, that Federal labor law doctrines do not control in cases such as the present, where the employer is a state or any political subdivision thereof. National Labor Relations Act, § 2(5), 29 USCA 152(5). Hence Michigan courts could ordinarily invoke their own exhaustion doctrines in labor disputes involving state or local governmental employers.

However, when local labor disputes also involve rights under the U. S. Constitution, the invocation of an exhaustion requirement to bar immediate access to the courts might run afoul of the U. S. Constitution. *Alexander* hints at this, 415 US 36, 57. Whether we must follow the logic of *Alexander* in hybrid questions of local labor law and U. S. constitutional law is an academic point; Michigan courts on their own have decided that exhaustion of grievance procedures is not required where constitutional claims are raised. *Barry v Flint Fire Department,* 44 Mich App 602, 205 NW2d 627 (1973).

doctrine would be inapplicable to her constitutional claim. The mere fact that the same conduct is violative of both the Constitution and the contract should not deny plaintiff immediate access to the court on her constitutional claim. *Barry v Flint Fire Department,* 44 Mich App 602, 606–607; 205 NW2d 627 (1973).

## II.

There is no doubt that if the maternity leave provisions had been unilaterally imposed on the teachers as a school board policy, they would violate due process. *Cleveland Board of Education v LaFleur,* 414 US 632; 94 S Ct 791; 39 L Ed 2d 52 (1974). *Cf., Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973) (rebuttable presumption in custody hearings violates due process clause). *LaFleur* struck down maternity leave provisions nearly identical to those in question, the Supreme Court concluding that the provisions were based on irrebuttable presumptions that unnecessarily burdened the teacher's freedom of personal choice in marriage and family matters. 414 US 632, 639–640.

The appellant tries to distinguish *LaFleur* by arguing that plaintiff's bargaining representative agreed to the maternity provisions in the collective bargaining agreement.[7] We think that the union could not consent to this overburdening of plaintiff's protected freedom of personal choice.

---

[7] We note that if the same contract were negotiated today, it would presumably be illegal and unenforceable under the present Title VII, 42 USC 2000e *et seq.,* and the United States Equal Employment Opportunity Commission guidelines, 29 CFR 1604.10. *See Hutchison v Lake Oswego School District,* 374 F Supp 1056 (1974). However, when the present dispute arose, Title VII applied only to private employers. Our scrutiny is restricted to the validity of the contract under the U. S. Constitution.

It is true that, under Federal labor law, certain rights may be bargained away by the union, *Mastro Plastics Corp v National Labor Relations Board,* 350 US 270; 76 S Ct 349; 100 L Ed 2d 309 (1956) (right to strike for economic leverage). However, as was noted in *Alexander v Gardner-Denver Co,* 415 US 36, 51; 94 S Ct 1011, 1021; 39 L Ed 2d 147, 160 (1974), the rights that may be bargained away are restricted:

"[R]ights * * * *conferred on employees collectively to foster the processes of bargaining* * * * properly may be exercised or relinquished by the union as collective bargaining agent to obtain economic benefits for unit members." (Emphasis added.)

*Alexander* went on to hold that Title VII rights are "an individual's rights to equal employment opportunities" and may not be waived. In the present case, the right to freedom of choice in marriage and family matters is similarly a right of an individual that the union cannot barter or unnecessarily burden. *Cf., People v Earegood,* 12 Mich App 256, 275; 162 NW2d 802 (1968), *rev'd in part on other grounds,* 383 Mich 82; 173 NW2d 205 (1970).

This highly personal right is well rooted in the Constitution. *Eisenstadt v Baird,* 405 US 438; 92 S Ct 1029; 31 L Ed 2d 349 (1972), *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), and *LaFleur, supra.* Certain statutory rights, of a lesser importance in our scheme of liberty, may not be bargained away by the union. *E.g., National Labor Relations Board v The Magnavox Company of Tennessee,* 415 US 322; 94 S Ct 1099; 39 L Ed 2d 358 (1974) (employees' rights under section 7 of National Labor Relations Act, 29 USC 157, to form unions), *Lerwill v Inflight Services, Inc,* 379 F

Supp 690 (ND Cal, 1974) (right to overtime pay guaranteed by Fair Labor Standards Act of 1938, 29 USCA 201 *et seq., Employment Security Commission v Vulcan Forging Co,* 375 Mich 374; 134 NW2d 749 (1965) (unemployment compensation).

The present agreement, by overburdening a constitutional right, is violative of the public policy of the United States and of Michigan, as manifested in the Constitution; we cannot enforce the agreement. *Hurd v Hodge,* 334 US 24; 68 S Ct 847; 92 L Ed 1187 (1948), *St Helen Shooting Club v Mogle,* 234 Mich 60, 70–71; 207 NW 915 (1926). See, also, *Botany Industries, Inc v New York Joint Board, Amalgamated Clothing Workers,* 375 F Supp 485, 490–491 (SD NY, 1974), *vacated on other grounds,* 506 F2d 1246 (CA 2, 1974), *Riley v Bendix Corp,* 330 F Supp 583, 590 (MD Fla, 1971), *rev'd on other grounds,* 464 F2d 1113 (CA 5, 1972), *Dewey v Reynolds Metals Co,* 300 F Supp 709, 713 (WD Mich, 1969), *rev'd on other grounds,* 429 F2d 324 (CA 6, 1970), *aff'd by equally divided court,* 402 US 689; 91 S Ct 2186; 29 L Ed 2d 267 (1971). *Cf. Federoff v Ewing,* 386 Mich 474; 192 NW2d 242 (1971).

## III.

Appellant contends that even if the clause pertaining to maternity leave is unconstitutional, plaintiff is to be treated as if she were on ordinary leave of absence. Appellant claims that plaintiff failed to comply with the following notice requirement pertaining to a leave of absence:

"[I]f a teacher gives written notice at least sixty (60) days before the commencement of school that he is returning from a leave at the commencement of school,

he will be returned to the position he held at the commencement of the leave". Art IX, E.

The trial judge found that plaintiff's letter of March 11, 1970, in which she stated that she wished to return to work "as soon as legally possible", was satisfactory notice. While it would appear that plaintiff's letter, mailed months prior to giving birth, could not exactly advise the Board of the date of plaintiff's physical ability to return to work after the birth, we are reluctant to overturn the trial court's finding of adequacy of notice. GCR 1963, 517.1. When the school board received the letter, the probability was that plaintiff would have a normal gestation period and an uncomplicated post-birth recovery. The probability was that plaintiff would be able to return to work in September; this probability, when combined with the letter, satisfied the notice provision of the contract.

## IV.

The Board challenges the trial court's awarding damages of $5,249.23 for two reasons: (a) No damages should have been imposed given appellant's good faith reliance on existing law, and (b) If damages were properly imposed, the Federation should be jointly liable.

We reject these challenges to the judgment but admit that we are not entirely satisfied in requiring the Board to pay damages. We would, however, be less satisfied in denying plaintiff compensation. Her rights were clearly violated; she suffered economic loss as a result, losses well established in the court below. Even though the constitutional claim may be one of first impression, courts should award compensation where there is an infringement of personal interests in liberty. *Cf., Bivens v*

*Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 US 388; 91 S Ct 1999; 29 L Ed 2d 619 (1971). We cannot honor the Board's claim of reliance; it had less restrictive means available to it to achieve its purposes of administrative efficiency. The displacement of the relied upon clause will do violence to no interest that is worthy of protection. See Cardozo, *Paradoxes of Legal Science* (Columbia University Press ed, 1928), p 72.

Appellant's attempt to impose liability on the Federation is unsuccessful. Appellant failed to file a cross-claim below and we are precluded from considering its arguments, however challenging and attractive they may be. *Cf., Magreta v Ambassador Steel Co, 380 Mich 513; 158 NW2d 473 (1968). The fact that plaintiff might have appealed the directed verdict issued in favor of the Federation is no assistance to appellant; one party cannot claim another party's appellate opportunities. Burke v Gaukler Storage Co,* 13 Mich App 536; 164 NW2d 691 (1968), GCR 1963, 806.1.

## V.

We affirm the judgment of the trial court. We do not consider this a vexatious appeal under GCR 1963, 816.5(1) because of the nature of the issues involved. We award no costs, a public question being involved.