Julie DRIESSEN, Plaintiff,

v.

Layton FREBORG et al., Defendants.

No. A77–1020.

United States District Court,
D. North Dakota,
Southwestern Division.

May 3, 1977.

As Amended June 20, 1977.

Daniel J. Chapman, Bismarck, N. D., for plaintiff.

B. Timothy Durick, Bismarck, N. D., for defendants.

## MEMORANDUM and ORDER

VanSICKLE, District Judge.

This action was originally commenced against Underwood Public School District No. 8, a public corporation. By stipulation in open court, accepted personally by four of the five School Board members, the Public School District was dismissed as a party defendant, and the following members of the School Board were named as parties defendant:

Layton Freborg
Clayton Boots
Les Landenberger
James Sayler
Harley Hassler

In return for waiver of the time for answer by Defendants, and for adoption of the Answer of the School Board as their answer, and their consent to immediate trial, Plaintiff agreed that she would and did recognize that the Defendants were protected from individual liability under the doctrine of qualified good faith immunity as spelled out in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), i. e., there is made no claim that the Defendants knew, or reasonably should have known, that the action they took within their sphere of official responsibility would violate the constitutional or statutory rights of the Plaintiff.

Prior to the 1973–74 school year, the School Board of Underwood Public School District No. 8 had no definite policy as to pregnant teachers who came to full term during their teaching year. In the 1972–73 school year, a primary school teacher threatened the School Board with a lawsuit if it relieved her of her duties because of her pregnancy. As a result they did not remove her and she went into labor in the classroom.

In the 1973–74 teacher negotiations, at the insistence of the School Board, there was put into the contract a clause drafted by the Superintendent of Underwood Public School District No. 8 which read:

"A teacher that becomes pregnant would be required, with consent of their physician, to take a leave of absence after the seventh month of pregnancy and not return to teaching until one month after childbirth."

This provision was drafted without consideration of any medical data or information.

The Plaintiff, Julie Driessen, was employed as a teacher at the beginning of the 1975–76 school year. At that time the maternity leave clause was in the general labor contract and she knew it. She participated as a "note taker" and secretary of the Underwood Teacher Association in the contract negotiations for the year 1976–77. At that time the fact of the existence of the clause was discussed. But there was no dialogue as to its probable meaning. She did protest to the negotiating board members that she felt the clause violated her civil rights. Both parties interpreted the clause to mean that a pregnant teacher must be relieved at the end of the seventh month of her pregnancy, and that she could be relieved earlier if a physician, acceptable to both parties, so recommended.

Mrs. Driessen is a teacher of business education and physical education. She has a weekly coeducational class of seventh and eighth graders, wherein she teaches team sports, badminton, etc., two hours a week. She also has a class of high school girls, wherein she teaches team sports, including refereeing the games, two hours a week.

Mrs. Driessen became pregnant in August, 1976. She was advised by her doctor of the pregnancy in October, 1976. The date of her delivery is estimated to be May 5, 1977. She was directed to leave the classroom as of March 7, 1977. At that time she was earning $9,050.00 per school year, paid over a 12 month period. She asked to teach 19 days longer—that is, through the last full week of March. That request was denied. The end of the first week in March was the end of the seventh month of her pregnancy.

She was replaced by a male teacher, a farmer who had left teaching, but who also had a major in business education and a minor in physical education.

The school employs eighteen teachers of whom eleven are female. Except for the problem of the teacher who went into labor in the classroom and this Plaintiff, the School Board has had no prior experience with school teachers being relieved for reasons related to pregnancy.

The Plaintiff took two days of sick leave during the first or second trimester of her pregnancy because of morning sickness. Otherwise she feels that her overall teaching performance has not been adversely affected. She has suffered no undue fatigue, no irritability, and the School Board members and the Superintendent did not assert that her performance as a teacher had suffered, although they did recognize that as she went into the third trimester of her pregnancy she did not herself participate in the physical education drills and games.

There was no reported change in her business education teaching methods.

One School Board member, married and the father of four children, testified that in his experience the last two months of pregnancy were difficult, and the expectant mother tended to be easily fatigued, irritable and emotionally upset.

John J. Smolenski, M.D., the Plaintiff's attending physician, testified that there was no medical reason why the Plaintiff should give up her teaching activities at the end of the seventh month. But cross examination disclosed she did not tell him she taught physical education four hours per week.

The Court called C. R. Montz, M.D., an Obstetrician who has practiced in the Bismarck area for the past twenty-two years, as an expert witness. Dr. Montz testified that in our present day society, with a normal pregnancy, it is medically reasonable for a pregnant woman to work until term, that is, until the day of delivery.[1] He further testified that the type of work performed generally is not a problem. Also, he said, with reference to teaching physical education, that a pregnant woman might have mechanical problems, for example, touching her toes; but that "jumping up and down or jogging would not hurt her a bit."

Dr. Montz also affirmed the accuracy of the following statement in exhibit 5, J. A. Pritchard and P. C. MacDonald, *Williams Obstetrics,* at 246–47 (15th ed. 1976):

"Normal Duration of Pregnancy. The average duration of pregnancy calculated from the first day of the last menstrual period averages very close to 280 days, or 40 weeks. Kortenoever (1950), in an analysis of 7,504 pregnancies, found the average duration to be 282 days. Moreover, the mean value was 281 days calculated from data of the Obstetrical Statistical Cooperative for 77,300 women who underwent spontaneous labor and whose infants weighed at least 2,500 g. *More recently, Nakano (1972) identified for 5,596 pregnancies in Osaka, Japan, the mean duration to be 279 days from the first day of the last menstrual period with two standard deviations of ±17 days.* All pregnancies that terminated before 28 weeks gestation were excluded by Nakano, as were breeches and multiple births.

It is customary to estimate the expected date of delivery by adding 7 days to the date of the first day of the last normal menstrual period and counting back 3 months (Naegele's rule). For example, if the woman's last menstrual period began on September 10, the expected date of delivery would be June 17. It is apparent that pregnancy "begins" on the average 2 weeks before ovulation if pregnancy is so calculated from the first day of the last menstrual period. Clinicians use gestational age, or menstrual age, calculated from the first day of the last menstrual

1. Similar testimony has been given in other recent cases, see i. e., *Gilbert v. General Electric Company,* 375 F.Supp. 367, 376 (E.D.Va. 1974).

period to identify events in pregnancy, whereas embryologists and other biologists more often use ovulatory age, or fertilization age, which is typically 2 weeks shorter.

It has become customary to divide pregnancies into three equal parts, or trimesters, of slightly more than 13 weeks, or 3 calendar months, each. There are certain major obstetric problems that cluster in each of these time periods. For example, most spontaneous abortions occur during the first trimester, whereas practically all cases of pregnancy-induced hypertension become clinically evident during the third trimester. The clinical use of trimesters to describe the duration of a specific pregnancy should be abandoned, however. It is inappropriate in case of uterine hemorrhage, for example, to categorize the problem temporarily as "third trimester bleeding." Appropriate management for the mother and her fetus will vary remarkably, depending upon whether the bleeding occurs early or late in the third trimester. Precise knowledge of the age of the fetus is imperative for ideal obstetric management. Therefore, expert attention must be given to this important measurement. The clinically appropriate unit of measure is Weeks of Gestation Completed." (Emphasis added)

The Superintendent stated that use of the Teacher Placement Bureau of the State of North Dakota for the employment of replacement teachers required from two to three weeks lead time.

Plaintiff claims that a rule dictating unpaid, mandatory maternity leave "after the seventh month" of pregnancy violates the equal protection and due process clauses of the 14th Amendment and that this Court has jurisdiction under 42 U.S.C. § 1983. Plaintiff seeks damages for loss of wages and an injunction against enforcement of the rule.

As this writer knows well, heavy handed interference by an "absentee court" or an "absentee administrative officer" does immeasurable harm to the will for local self-government. Also, local governing bodies whose members usually serve for little or no compensation have become fearful and timid about exercising leadership because of the uncertainties which surround the erosion of the doctrine of governmental immunity.

For this reason it would seem advisable to determine what maternity leave rules might be lawful, as a standard against which to test this rule. To help us we may consider some assumptions which are basic to the problem.

Primary responsibility for her welfare and for the welfare of the unborn child rests with the pregnant woman; while primary responsibility for the welfare of the student rests with the governing body of the school.

The problem of the pregnancy relative to a woman's civil rights may have been colored by the decision in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), since it is clear that a pregnancy can be terminated at the will of the woman. At the same time, the thrust of the developing law is that a pregnant woman has a paramount right to retain her job while she is able to perform it competently. Procreation is a fundamental right. *Roe v. Wade, supra; Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). That right should not be needlessly impinged upon. *Dunn v. Blumstein,* 405 U.S. 330, 343, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Griswold, supra,* 381 U.S. at 485, 85 S.Ct. 1678.

In *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1973), the Supreme Court held that a School Board maternity rule which included a provision mandating a maternity leave five months before the expected childbirth was violative of the due process clause of the 14th Amendment in that it sought to impose arbitrarily, and without a factual basis, an irrebuttable presumption that teachers could not teach effectively beyond the fourth month of pregnancy.

Similarly, a labor contract which provides for mandatory leave at the end of the seventh month of pregnancy without reference to factual medical realities is arbitrary, and is violative of a pregnant woman's 14th Amendment due process rights.

During the course of the pregnancy however, the school administration should be able to apply its lawful standards of sick leave, discipline, temporary relief from duty, or even dismissal for cause, should the teacher's physical problems, or performance, warrant their application.

The school administration does have a duty to assure minimal disruption of the school system and continuity of instruction to the students. *Cleveland Board of Education v. LaFleur, supra.* In order to meet that obligation it is not unreasonable to require the pregnant teacher to accept maternity leave eighteen days before the estimated date of delivery. Nor is it unreasonable to require the teacher to request such maternity leave at least three weeks before such leave will begin. Finally, it is not unreasonable to require the teacher to furnish a physician's certificate of physical fitness prior to her return to teaching, provided that upon the furnishing of such certificate, she will be reemployed no later than the first day of the school year after the date she is declared re-eligible. *LaFleur, supra.*

The fact that Mrs. Driessen accepted employment under the labor contract does not mandate enforcement of the maternity leave clause. The right to make and enforce private agreements is generally to be protected. However:

"These rights are restricted by the transcendent rule that denies enforceability to a private contractual provision which . . . would gravely violate paramount requirements of public interest." *Northwest Airlines, Inc., v. Alaska Airlines, Inc.,* 351 F.2d 253, 256 (9th Cir. 1965).

Such a contractual provision is declared void and unenforceable on the theory that the only way to stop the making of contracts injurious to the interests of society is to refuse to enforce them. *Attridge v. Pembroke,* 235 App.Div. 101, 256 N.Y.S. 257 (4th Dep't 1932).

Since the challenged maternity leave clause is violative of constitutional rights, its enforcement would be contrary to public policy. *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); *Kewin v. Board of Ed. of Melvindale, etc.,* 65 Mich.App. 472, 237 N.W.2d 514, 518–19 (1975).[2] Therefore, the court cannot lend its authority to enforcement of the contract provision.

Under 42 U.S.C. § 1983 as amended by the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94–559:

". . . [T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

S.Rep.No.94–1011, 94th Cong., 2d Sess., 5 U.S.Code Cong. & Ad.News, 1976, pp. 5908, 5910 (1976), recites the purpose of the amendment:

"All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."

However, in this case, counsel for the Plaintiff made the point in open court that he

---

2. This case also dealt with negotiated contractual provisions mandating maternity leave.

The court found that the union could not waive the teachers' personal rights in this area.

had no desire to impose monetary burdens on the named Defendants. Since he has offered no evidence in support of attorney's fees, his claim for attorney's fees is deemed abandoned and no attorney's fees are awarded.

Therefore, I conclude that:

1. Plaintiff is entitled to a judgment enjoining the Defendants, in their official capacity as members of the School Board of Underwood Public School District No. 8, and their officers, agents, servants, employees, and attorneys, and all other persons acting in concert with or participating with those Defendants, from enforcing the particular clause incorporated in the teacher contract of employment herein involved, which clause reads as follows:

   "A teacher that becomes pregnant would be required, with consent of their physician, to take a leave of absence after the seventh month of pregnancy and not return to teaching until one month after childbirth."

2. Plaintiff is entitled to damages for 19 days pay, plus her costs and disbursements in this action.

3. Plaintiff is not entitled to Attorney's fees.

Plaintiff shall prepare and submit a form of judgment consistent with this memorandum.

This memorandum and order is deemed to satisfy the requirements of Rule 52(a) of the Federal Rules of Civil Procedure.