BALL v CITY OF DETROIT

Docket No. 25586. Submitted November 1, 1977, at Detroit.—Decided July 5, 1978.

In 1970 Robert Ball and 64 others filed suit on behalf of themselves and all others similarly situated against the City of Detroit, the Detroit Civil Service Commission, the American Federation of State, County and Municipal Employees, District Council 77, and others challenging the union's right, under an "agency shop" clause of the master contract entered into between the city and the union, to compel payment of an "agency shop service fee" by nonmember employees in an amount equal to membership dues. In 1972 the Michigan Supreme Court held that "agency shop provisions" were contrary to the public employees relations act *(Smigel v Southgate Community School District,* 388 Mich 531; 202 NW2d 305 [1972]). In early 1973 an injunction was issued restraining defendants from enforcing the agency shop provisions of the collective bargaining agreements. In June, 1973, the language of the act was amended to relieve the statute from the interpretation in *Smigel.* The city and the union thereupon entered into a new agency shop agreement in a "memorandum of understanding", and the city sent notices to all employees in the bargaining unit of Council 77 that they must either join the union, pay the agency shop service fee or face dismissal. A supplemental injunction stopped defendants from enforcing the agency shop provision and from dismissing employees for not paying, pending the outcome of the suit. The Wayne Circuit Court, George Martin, J., entered judgment providing: (a) the agency shop agreement is not unconstitutional; (b) refunds to 277 employees for deductions made illegally prior to amendment of the act; (c) refunds to seven named plaintiffs, who had proven their objections to the union's use of service fees for political purposes, in an amount of one percent of the service fee subsequent to the amendment; (d) a future reduction of the service fee payable by those seven employees; (e) that the

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 595–609.
[2–6] 48 Am Jur 2d, Labor and Labor Relations §§ 18, 182.

lawsuit was not a class action for purposes of restitution to those who did not testify and prove their claim; (f) that after the act's amendment, all employees must either pay union dues or service fees or face dismissal; (g) judgments of no cause of action against the city, the Detroit Civil Service Commission and others; and (h) for dissolution of the injunction enjoining collection of service fees and discharging employees who didn't pay. Plaintiffs appeal. *Held:*

1. The "exhaustion of remedies" doctrine does not preclude recourse to Michigan courts where fundamental constitutional rights are asserted.

2. It is constitutional for a governmental employer to negotiate an agency shop agreement and require its employees who are not members of the exclusive bargaining agent to pay a service fee to the agent for the purpose of defraying the cost of collective bargaining, contract administration and grievance adjustment.

3. Once any nonmember indicates his objection to the use of any portion of the required service fee for purposes unrelated to collective bargaining, contract administration and grievance adjustment, the burden shifts to the union to document those valid costs and to refund any excess.

4. It is not incumbent upon the objecting nonmember to specify to what uses he objects.

5. Once a union in an agency shop situation has proven what percentage of the service fee required of nonmember employees of the bargaining unit are unrelated to collective bargaining, contract administration and grievance adjustment, future service fees must be reduced by that percentage to assure that little, if any, of the service fee paid by the objecting nonmember will be used, even temporarily, to finance activities unrelated to collective bargaining.

6. A union in an agency shop situation shall adjust, at least annually, the service fee reduction according to fluctuations in permissible expenditures and a nonmember wishing to challenge the union's calculations shall exhaust the internal union appellate procedures before seeking review in the courts; such a prospective "exhaustion of remedies" requirement is permissible because the risk of improper use of the service fee is minimized by an initial judicial determination and by subsequent fee reductions and because such a procedure avoids the possibility of continual judicial supervision.

7. Requiring nonmembers of the union in an agency shop situation to pay service fees into an escrow account prior to a

judicial determination of the amount to which the union is entitled assures nonmembers that their First Amendment rights are not violated by union use of the funds, even temporarily, for activities to which they are opposed while at the same time ensuring that nonmembers pay their service fee or face dismissal and ensuring the union prompt access to the funds upon judicial determination as to what portion they are entitled.

8. Suits to enforce first amendment rights of nonmembers of a union in an agency shop situation may not be brought as class actions; dissent on the part of nonmember employees may not be presumed.

Affirmed in part, reversed in part and remanded.

1. COURTS—DEFENSES—EXHAUSTION OF REMEDIES DOCTRINE—CONSTI-
   TUTIONAL LAW—FUNDAMENTAL CONSTITUTIONAL RIGHTS.

   The "exhaustion of remedies" doctrine does not preclude recourse to Michigan courts where fundamental constitutional rights are asserted.

2. LABOR RELATIONS—CONSTITUTIONAL LAW—AGENCY SHOP—PUBLIC
   EMPLOYEES—UNIONS—NONMEMBER EMPLOYEES—SERVICE FEES
   —BURDEN OF PROOF.

   It is constitutional for a governmental employer to negotiate an agency shop clause and then require its employees who are not members of the exclusive bargaining agent to pay the union a service charge to finance union expenditures "for the purposes of collective bargaining, contract administration and grievance adjustment," however, once a nonmember indicates his objection to the use of any portion of the service fee for purposes unrelated to collective bargaining, contract administration and grievance procedures, the burden shifts to the union to document those valid costs and then refund, or not collect in the first place, any excess to the objecting nonmember; it is not incumbent upon the objecting nonmember to specify to what uses he objects.

3. LABOR RELATIONS—UNIONS—AGENCY SHOP—SERVICE FEE REDUC-
   TIONS.

   Once a union in an agency shop situation has proven what percentage of the service fee required of nonmember employees of the bargaining unit are unrelated to collective bargaining, contract administration and grievance adjustment, future service fees must be reduced by that percentage to assure that little, if any, of the service fee paid by the objecting nonmem-

ber will be used, even temporarily, to finance activities unrelated to collective bargaining.

4. Labor Relations—Public Employees—Unions—Agency Shop—Service Fee Reductions—Adjustment of Service Fee Reductions—Appeal and Error—Exhaustion of Remedies.

A public employee union in an agency shop situation shall adjust, at least annually, the service fee reduction according to fluctuations in permissible expenditures and a nonmember wishing to challenge the union's calculations shall exhaust the internal union appellate procedures before seeking review in the courts; such a prospective "exhaustion of remedies" requirement is permissible because the risk of improper use of the service fee is minimized by an initial judicial determination and by subsequent fee reductions and because such a procedure avoids the possibility of continual judicial supervision.

5. Labor Relations—Public Employees—Unions—Agency Shop—Service Fee—Reduction—Escrow of Service Fee Prior to Judicial Determination.

Requiring nonmembers of a public employee union in an agency shop situation to pay service fees into an escrow account prior to a judicial determination of the amount to which the union is entitled assures nonmembers that their first amendment rights are not violated by union use of the funds, even temporarily, for activities to which they are opposed while at the same time ensuring that nonmembers pay their service fee or face dismissal and ensuring the union prompt access to the funds upon judicial determination as to what portion they are entitled.

6. Labor Relations—Unions—Agency Shop—Service Fees—Class Action Suits.

Suits to enforce first amendment rights of nonmembers of a union in an agency shop situation may not be brought as class actions.

*Keller, Thoma, Toppin & Schwarze, P. C.* (by *David E. Kempner), Webster, Kilcullen & Chamberlain,* and *National Right to Work Legal Defense Foundation* (by *Raymond LaJeunesse, Jr.),* for plaintiffs.

*Kermit G. Bailer, Corporation Counsel,* and *Michael Hurvitz,* Assistant Corporation Counsel,

for defendant City of Detroit and Detroit Civil Service Commission.

*Zwerdling & Maurer,* for defendant AFSCME Council No. 77, AFL-CIO.

Amicus Curiae: Detroit Federation of Teachers (by *Marston, Sachs, Nunn, Kates, Kadushin & O'Hare).*

Before: BEASLEY, P. J., and D. E. HOLBROOK, JR. and M. J. KELLY, JJ.

D. E. HOLBROOK, JR., J. In June 1970, 65 nonunion member employees of the City of Detroit filed suit against the City of Detroit, the Detroit Civil Service Commission, the American Federation of State, County and Municipal Employees (AFSCME), District Council 77 and various individual former and current officers of Council 77. Plaintiffs challenged defendant union's right to compel payment of an "agency shop service fee", as required by collective bargaining agreements between the union and the city, in the same amount as union dues paid by employees who were union members. Procedural skirmishing followed and subsequent agreements were entered into by the city and union.

In 1972 the Michigan Supreme Court ruled that "agency shop provisions" were repugnant to the public employees relations act (PERA). *Smigel v Southgate Community School Dist,* 388 Mich 531; 202 NW2d 305 (1972). In early 1973 a Wayne County circuit judge issued an injunction restraining defendants from enforcing the agency shop provisions of the collective bargaining agreements.

On June 14, 1973, the statutory subsection of PERA dealing with agency shop provisions, MCL

423.210; MSA 17.455(10), was amended, in perti-
nent part, to read (new language in italics):

"423.210 Unlawful labor practices; service fees in lieu
of dues
"Sec. 10. *(1)* It shall be unlawful for a public employer
or an officer or agent of a public employer (a) to
interfere with, restrain or coerce public employees in
the exercise of their rights guaranteed in section 9; (b)
to initiate, create, dominate, contribute to, or interfere
with the formation or administration of any labor
organization: Provided, That a public employer shall
not be prohibited from permitting employees to confer
with it during working hours without loss of time or
pay; (c) to discriminate in regard to hire, terms or other
conditions of employment in order to encourage or
discourage membership in a labor organization: *Pro-
vided further, That nothing in this act or in any law of
this state shall preclude a public employer from making
an agreement with an exclusive bargaining representa-
tive as defined in section 11 to require as a condition of
employment that all employees in the bargaining unit
pay to the exclusive bargaining representative a service
fee equivalent to the amount of dues uniformly re-
quired of members of the exclusive bargaining repre-
sentative* * * *
"*(2) It is the purpose of this amendatory act to
reaffirm the continuing public policy of this state that
the stability and effectiveness of labor relations in the
public sector require, if such requirement is negotiated
with the public employer, that all employees in the
bargaining unit shall share fairly in the financial sup-
port of their exclusive bargaining representative by
paying to the exclusive bargaining representative a
service fee which may be equivalent to the amount of
dues uniformly required of members of the exclusive
bargaining representative.*"

After the statutory amendments, a new agency
shop clause was entered into between the city and
union in a "memorandum of understanding". Pur-
suant to that memorandum, the city sent written

notices to all employees in the bargaining unit of
Council 77, informing them that they were re-
quired to either join the union, pay the service fee
or face dismissal.

In November, 1973, a "Supplemental Injunction
Order" was issued from Wayne Circuit Court re-
straining defendants from enforcing the agency
shop clause and from discharging or threatening
to discharge those employees who did not pay. The
injunction was later amended and to remain in
force pending the outcome of plaintiffs' suit.

Finally in early 1975 plaintiffs' suit went to trial
before Wayne Circuit Judge George Martin. In a
lengthy opinion, the judge made extensive findings
of fact and law. The resulting judgment provides
in relevant part:

a) The agency shop agreement is not unconstitu-
tional.

b) Refund was ordered as to 277 employees for
deductions made illegally during the period from
April 30, 1970, to July 17, 1973.

c) Seven named plaintiffs were entitled to a
refund from Council 77 of the amounts used by
Council 77 for political expenses after July 17,
1973. (In the trial court's findings, that amount
was found to be 1% of the service fee.)

d) The same seven plaintiffs were entitled to a
future reduction in required fees in the same
amount as used by Council 77 for political activi-
ties.

e) The lawsuit was not a class action for the
purpose of obtaining restitution by those who
did not testify and prove their objections.

f) After July 17, 1973, all plaintiffs must pay
either union dues or service fees or suffer dis-
missal.

g) Judgment of no cause of action was rendered

for defendants City of Detroit, Detroit Civil Service Commission and defendants Van Zandt and Simpson.

h) The injunction, restraining defendants from collecting service fees and from discharging those who did not pay, was dissolved.

The judgment was entered on April 24, 1975, and the trial judge issued a supplemental opinion on August 12, 1975.

Subsequent to the filing of plaintiffs' appeal in this case, the United States Supreme Court addressed several aspects of Michigan's statute which allows agency shop agreements in the public sector, MCL 423:210; MSA 17,455(10). *Abood v Detroit Bd of Education*, 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). In *Abood* plaintiff teachers challenged the constitutionality of MCL 423:210; MSA 17.455(10), and the Wayne County Circuit Court granted summary judgment in favor of defendants Detroit Board of Education and Detroit Federation of Teachers. The Court of Appeals reversed in *Abood v Detroit Bd of Education*, 60 Mich App 92; 230 NW2d 322 (1975), and when the Michigan Supreme Court denied leave to appeal, 395 Mich 755 (1975), the United States Supreme Court noted probable jurisdiction, 425 US 949; 96 S Ct 1723; 48 L Ed 2d 192 (1976).

In a lengthy majority opinion, the United States Supreme Court concluded that insofar as the agency shop service charge is used to finance union expenditures for purposes of collective bargaining, contract administration and grievance adjustment, the agency shop agreement is constitutional. *Abood, supra,* at 224–226. Further the Court concluded that public employees are guaranteed First Amendment rights and that objecting employees may constitutionally prohibit the union

from using any portion of the service fee for the advancement of political views or support of political candidates. The Court recognized that there will be difficult problems drawing the line between collective bargaining activities and ideological activities unrelated to collective bargaining.

Since the Court was only passing on the propriety of the trial court's grant of summary judgment, the Court declined to define such a dividing line and concluded that the plaintiffs' allegations, if proven, stated a cause of action under the First and Fourteenth Amendments. *Abood, supra,* at 236–237.

Next, the Court addressed the design of an appropriate remedy for those employees who objected to the use of any portion of the service fee for activities unrelated to collective bargaining. The objective of the remedy, "must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto without restricting the union's ability to require every employee to contribute to the cost of collective bargaining activities". 431 US at 237. For guidance the Court looked to its prior decisions. The Court focused on four controlling principles: 1) the "practical decree" enunciated in *Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees v Allen,* 373 US 113; 83 S Ct 1158; 10 L Ed 2d 235 (1963), which provided for (a) the refund of a portion of the exacted funds in the proportion union political expenditures bear to total union expenditures, and (b) the reduction of future exactions by the same proportions. *Abood, supra,* at 240; 2) because of the difficulties of judicial administration of such a remedy, the *Allen* "Court also suggested that it would be highly desirable for unions to adopt a

'voluntary plan by which dissenters would be afforded an internal union remedy.' " *Abood, supra,* at 240; 3) the Michigan Court of Appeals was correct in denying the broad injunctive relief requested by plaintiff teachers in the *Abood* case; and 4) to protect a dissenting employee's First Amendment rights, the employee need only indicate that he or she opposes ideological expenditures which are not related to collective bargaining:

> "But in holding that as a prerequisite to any relief each appellant must indicate to the Union the *specific* expenditures to which he objects, the Court of Appeals ignored the clear holding of *Allen.* As in *Allen,* the employees here indicated in their pleadings that they opposed ideological expenditures of *any* sort that are unrelated to collective bargaining. To require greater specificity would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure. It would also place on each employee the considerable burden of monitoring all of the numerous and shifting expenditures made by the Union that are unrelated to its duties as exclusive bargaining representative." (Emphasis in original; footnote omitted.) *Abood, supra* at 241.

It is within these parameters that a state may design a remedy to ensure the protection of the constitutional rights of objecting employees while at the same time permitting the union to collect that portion of the service fee related to collective bargaining, contract administration and grievance procedures.

In the instant case, as noted earlier, the briefs were filed before the United States Supreme Court decision in *Abood.* At oral argument this panel

invited supplemental briefs so the parties could reassess their positions in light of the *Abood* decision.

Recognizing that several initial grounds of attack had been foreclosed by *Abood,* plaintiffs-appellants have narrowed their request for a remand to the following issues:

I. What is the proper burden of proof?

II. Should the service fees be placed in escrow until the union has met its burden of proof?

III. Should this action be treated as a class action?

As a prelude to an analysis of plaintiffs' specific contentions, we note the difficulty of fashioning a remedy which: a) protects the constitutional rights of nonunion employees; b) is consistent with the goals of labor law policies; and c) avoids continual judicial supervision. We fully agree with the Supreme Court that it would be highly desirable for unions to adopt internal procedures for calculating and refunding that portion of fees unrelated to collective bargaining to objecting employees. *Allen, supra,* at 122; *Abood, supra,* at 240. The parent of Council 77, AFSCME International, has adopted such a procedure. Under Article IX, § 9 of the AFSCME Constitution, the union makes a determination of the amounts expended for partisan political and ideological purposes and, accordingly, the amount to be rebated to those nonmembers who object to such expenditures. That rebate calculation may be appealed to an AFSCME "Judicial Panel" and a final appeal may be taken to an independent "Review Panel". This appears to be similar to the procedure adopted by the teachers' union in the *Abood* case. See *Abood, supra,* n 41, p 240.

It is tempting to merely stay the lower court

action pending exhaustion of plaintiffs' internal union remedies. However where fundamental constitutional rights are asserted, the "exhaustion of remedies" doctrine does not preclude recourse to Michigan courts. *Kewin v Bd of Education of the Melvindale-Northern Allen Park Public Schools,* 65 Mich App 472, 477–479; 237 NW2d 514 (1975); *Barry v Flint Fire Dept,* 44 Mich App 602; 205 NW2d 627 (1973).

Because the constitutional questions raised by plaintiffs were not resolved until *Abood* and after the trial court decision and because of remaining questions of the burden of proof and proper remedy, we conclude a limited remand to the trial court is necessary.

## BURDEN OF PROOF

In *Abood* the Supreme Court held the Michigan statute constitutional insofar as the service charge is used to finance union expenditures "for the purposes of collective bargaining, contract administration, and grievance adjustment * * * ", *Abood, supra,* at 225–226. Because the union is in possession of facts and records documenting union expenditures, basic fairness requires the union to carry the burden of proof to establish the costs of these legitimate uses of an objecting nonmember's service fee. As the Court stated in *Abood,* a nonmember need not indicate specific expenditures to which he or she objects. Once a nonmember indicates his or her objection to the use of any portion of the service fee for purposes unrelated to collective bargaining, contract administration and grievance procedures, the burden shifts to the union to document those valid costs and then refund (or not collect in the first place) any excess to the objecting nonmember.

Under the above constitutionally mandated standards, it is clear the trial judge erred in several ways. While we certainly cannot fault the trial judge for failing to anticipate the Supreme Court in *Abood*, the case must be remanded for an application of the proper standards.

First, the trial judge imposed an incorrect burden of proof on the union. He concluded the union had carried its burden of establishing "political expenditures" amounted to 1% of the service fee. Further he concluded seven specific plaintiffs had failed to "prove" their objections to union expenditures for union activities and programs which were economic, professional, scientific and religious in nature. Instead of requiring the union to establish the costs of legitimate expenditures, the judge narrowly limited the union's burden of proof to establishing the cost of one type of impermissible expenditure.

Under *Abood* the union is entitled only to that portion of the service fee used for collective bargaining, contract administration and grievance adjustment. Further, objecting employees need not indicate specific causes to which they object nor can they be required to "prove" their objections. In the instant case, for example, the use of the service fee to advance or promote "religious" or "economic" views would be no less an infringement on an objecting employee's First Amendment rights than the use of the fee to promote "political" views. Once there is a sufficient indication that a nonmember objects to the use of any portion of the service fee for purposes unrelated to collective bargaining, contract administration and grievance adjustment, the nonmember has established a prima facie case. At that point, the union must establish the cost of the three permissible types of

expenditures. As noted by the Supreme Court, the dividing line may be difficult to draw. Whether a union can meet its burden of relating various expenditures to the three permissible types of expenditures should be adjudicated on a case by case basis.

Second, the trial judge erred by denying any relief to the large number of named plaintiffs who did not appear at trial to "prove" their objections. While this case cannot properly be brought as a class action (see discussion, *infra),* plaintiffs who have been involved in the litigation since 1970 have sufficiently indicated their objections to entitle them to relief. Again we emphasize that dissenting employees need not "prove" their objections in the sense that they must testify as to why they object or testify as to the specific activities and causes to which they object.

After remand and after the union has established the amount of the service fee it may retain, the objecting employees will be entitled to a refund of any monies already paid that exceed the amount retained by the union. We agree with the trial court and *Allen, supra,* that future service fees must be reduced by the percentage which is unrelated to collective bargaining, contract administration and grievance adjustment. This provides some assurance that little, if any, of the service fee paid by an objecting nonmember will be used, even temporarily, to finance activities unrelated to collective bargaining. See concurring opinion of Justice Stevens in *Abood, supra,* at 244.

In the future the union shall adjust, at least annually, the service fee reduction according to fluctuations in permissible expenditures. If a nonmember wishes to challenge the union's calculation, he or she must first utilize the internal union

appellate procedures before seeking review in the courts. This is a prospective "exhaustion of remedies" requirement, but because the risk of improper use of the service fee is minimized by an initial judicial determination and subsequent fee reductions, the policies of *Kewin, supra,* and *Barry, supra,* are not offended. By requiring prior resort to union remedies in the future, the possibility of continual judicial supervision is avoided.

## ESCROW

The Supreme Court concluded the Michigan Court of Appeals was correct in denying the, *"broad* injunctive relief requested." *Abood, supra,* at 241 (emphasis supplied). However we agree with plaintiffs that allowing the union the use of funds prior to a judicial determination subjects nonmembers to the risk that their fees may be used, even temporarily, for activities to which they are opposed. Because fundamental First Amendment rights are at stake, we believe the proper solution is to require nonmembers to pay service fees into an escrow account. While we recognize this works somewhat of a hardship on the union because temporarily it will be unable to collect even the portion of service fees to which it is entitled, that hardship is outweighed by the possibility that First Amendment rights will be violated. Establishing a temporary escrow account is not the broad injunctive relief prohibited in *Abood.* Rather it is a temporary measure designed to ensure nonmembers pay their service fees or face dismissal and to ensure the union will have prompt access to the funds to which it is entitled after a judicial determination. Whatever remains in the escrow account shall be refunded to the objecting nonmembers.

CLASS ACTION

The trial judge correctly refused to allow plaintiffs to bring the suit as a class action.

In *Allen, supra,* the Supreme Court stated:

"But we made clear in *Street* that 'dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee.' 367 U.S., at 774 [81 S Ct at 1803; 6 L Ed 2d at 1164). * * * No respondent who does not in the course of further proceedings in this case prove that he objects to such use will be entitled to relief. This is not and cannot be a class action." (Footnote omitted.) *Allen, supra,* at 118–119.

The *Abood* case makes clear the dissenting employee is required to do very little to indicate his or her objection in order to make out a prima facie case. Failure to take this minimal step precludes relief.

SUMMARY

We have attempted to balance strong competing interests in fashioning a remedy and guidelines for the trial court on remand. By allowing an initial judicial determination and subsequent service fee reductions and adjustment, the rights of the objecting nonmembers are protected and the union will be able to collect that portion of the service fees to which it is statutorily entitled. By requiring future objections to be processed first through union procedures, including an independent review panel, the need for continual judicial supervision has been avoided.

Affirmed in part; reversed in part; remanded for further proceedings.