Harry E. BECK, Jr., Doris R. Ambrose, Jacqueline S. Brandon, Mary Anna Cox, Sally B. DiMauro, Rue T. F. Downey, Kathleen A. Heil, John J. Hurley, Harriett Lipschultz, Clay B. Lutz, Barbara McGaughey, Roland R. Merkle, Ethel T. Merryman, Doris J. Morrow, Marion F. Northrop, Frances M. Philips, Vivian Reedy, Barbara A. Russell, Lois A. Stallings, Harry B. Swartz, Sr., Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA (C.W.A.), an Unincorporated Labor Organization, C.W.A. Committee on Political Education (C.W.A. Cope) C.W.A. District II, Local 2100 of C.W.A., Local 2101 of C.W.A., Local 2108 of C.W.A., Local 2110 of C.W.A., Local 2350 of C.W.A., American Federation of Labor-Congress of Industrial Organizations (AFL–CIO), a Federation of National and International Labor Organizations, AFL–CIO Committee on Political Education, Maryland State AFL–CIO.

Civ. No. B–76–839.

United States District Court, D. Maryland.

Jan. 12, 1979.

88

See also, D.C., 468 F.Supp. 93.

Hugh L. Reilly, Kensington, Md., for plaintiffs.

Matthew A. Kane, Washington, D. C. and Bernard W. Rubenstein, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiffs, twenty individuals employed by various Maryland subsidiaries of American Telephone and Telegraph Company (AT&T) and the Chesapeake and Potomac Telephone Company (C&P) and subject to collective bargaining agreements between the employers and the defendant union, Communication Workers of America (CWA),[1] are not members of the defendant union or of any labor organization. They are "agency fee payors"; that is, they are required to pay to the union as a condition of employment an amount equal to periodic union dues and assessments, so that they do not share in benefits secured by collective bargaining without sharing the cost. This "agency shop" arrangement is not prohibited by Section 8(a)(3) of the Taft-Hartley Act, 29 U.S.C. § 158(a)(3) and has consistently been upheld by the United States Supreme Court. *NLRB v. General Motors Corp.*, 373 U.S. 734, 735, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); *Oil Chemical & Atomic Workers International Union, AFL–CIO v.*

1. The plaintiffs' employers, AT&T and C&P, were also named originally as parties defendant. By Memorandum and Order of April 13, 1977, this court granted the employers' motions to dismiss. Accordingly, the Union (CWA) and its subsidiary locals and committees are the only remaining defendants and are hereafter referred to collectively as "defendant" or "Union" or "CWA."

*Mobil Oil Corp.*, 426 U.S. 407, 409 and n. 1, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976).[2]

The plaintiffs do not challenge the validity of the agency shop but bring this action seeking, *inter alia*, to enjoin enforcement of CWA's agency shop provision insofar as the fees collected from the plaintiffs are allegedly used for non-collective bargaining purposes. The plaintiffs allege in substance that their coerced contributions are used to support lobbying efforts and political campaigns which plaintiffs oppose in violation of plaintiffs' right under the first amendment to express themselves freely, and without prior restraint.[3]

If the Union is, as alleged, spending fees exacted pursuant to the agency shop arrangement in support of ideological activities to which plaintiffs object, such expenditures would, of course, seriously implicate the plaintiffs' fundamental first amendment interests. *Abood v. Detroit Board of Education*, 431 U.S. 209, 234, 237, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) *and see Buckley v. Valeo*, 424 U.S. 1, 23, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The United States Supreme Court has suggested that labor unions might avoid infringing the first amendment rights of dissenters by establishing internal procedures for determining what proportion of the union budget is allocated to political purposes and then refunding the proportionate amount and excusing dissenting agency-fee payors from "contributing" that amount in the future. *Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. Allen*, 373 U.S. 113, 122–23, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *International Association of Machinists v. Street*, 367 U.S. 740, 774–75, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). *See also Abood, supra*, 431 U.S. at 237 n. 34, 240, and n. 41, 97 S.Ct. 1782. Such an internal procedure, the Court supposed, might avert prolonged and expensive litigation. *Allen, supra*, 373 U.S. at 123, 83 S.Ct. 1158.

*Allen* and the other decisions of the Supreme Court recommending the establishment of an internal union accounting procedure do not expound in detail upon the nature of the procedure required. *Street, supra*, 367 U.S. at 775, 81 S.Ct. 1784, states merely that the dissenting employee is entitled to recover an amount proportionate to the fraction of the union budget which is spent on political purposes, although the employee is not required to trace his fees through the union machinery. *Allen, supra*, 373 U.S. at 122, 83 S.Ct. 1158, established that the union which collects and disburses the agency fees bears the burden of determining the correct proportion:

> Since the unions possess the facts and records from which the proportion of po-

---

**2.** Section 14(b) of the National Labor Relations Act permits the states individually to prohibit such union-security agreements, 29 U.S.C. § 164(b), *Retail Clerks v. Schermerhorn*, 373 U.S. 746, 757, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963) and *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963), but Maryland has not seen fit to do so.

**3.** The plaintiffs oppose, in fact, the expenditure of agency funds for *any* purposes not directly related to collective bargaining, not just those primarily political in nature. They oppose, for example, expenditures for union social functions, maintenance of strike benefit funds, and scholarship funds, *inter alia*. Complaint ¶ 16. While not denying that these expenditures may raise serious questions, for the purposes of this motion, it is sufficient to consider only the allegation that the Union is collecting and disbursing agency funds for political purposes which the plaintiffs oppose.

This court reserves for decision at a later date the question whether the Union may spend the plaintiffs' fees for any or all of the non-collective bargaining purposes complained of, noting that there does appear to be, in the decisions of the Supreme Court on the subject, a gray area between expenditures for "political purposes" which are clearly impermissible and expenditures for "collective bargaining, contract administration, and grievance adjustment," which are, of course, permissible. *Compare Internat'l Assn. of Machinists v. Street*, 367 U.S. 740, 774–75, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) and *Bhd. of Ry. and S. S. Clerks, Freight Handlers, Express and Station Employees v. Allen*, 373 U.S. 113, 121, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963) *with Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 225–26 and 236 and n. 33, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

litical to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion.

373 U.S. at 122, 83 S.Ct. at 1163.

In *Abood, supra*, 431 U.S. 209, 240, 97 S.Ct. 1782, 52 L.Ed.2d 261, the Court did not enlarge upon the practical proposal described in *Allen*, but did note that the union in that case had adopted an *Allen*-type plan[4] during the pendency of the litigation. The Court remanded the case to the state court and in doing so suggested that

> [i]n view of the newly adopted Union internal remedy, it may be appropriate under Michigan law even if not strictly required by any doctrine of exhaustion of remedies, to defer further judicial proceedings pending the voluntary utilization by the parties of that internal remedy as a possible means of settling the dispute.

431 U.S. at 242, 97 S.Ct. at 1803. The Court, in a footnote, declined to express an opinion as to the constitutional sufficiency of the internal remedy, and noted that if the employees concluded, after having exhausted, that the internal procedure was deficient, they would then be entitled to a judicial consideration of the adequacy of the remedy. The defendant Union[5] in this case has instituted an internal rebate procedure and has moved to dismiss or in the alternative to stay[6] these proceedings pending plaintiffs' exhaustion of the internal union remedy.

The plaintiffs contend that they should not be required to exhaust the internal union remedy prior to resort to judicial consideration. They assert that, in the first instance, internal union procedures are not applicable to those who are not members and, in any event, the CWA procedure is insufficient in many respects to safeguard the plaintiffs' constitutional rights. It is apparently the plaintiffs' contention that, contrary to the clear mandate of *Allen*, the determination which expenditures are political and which are permissible should under no circumstances be left to the union. They urge that only an Article III court may decide an issue which goes to the plaintiffs' fundamental first amendment rights.

Since this court has determined that on the facts of this case, exhaustion will not be required, it is unnecessary to reach the numerous constitutional issues the plaintiffs raise. The defendants' request for a stay pending exhaustion will be denied solely for the reason that it appears from the record to date that exhaustion would not promote settlement of the dispute and would cause unnecessary delay.

Although the Supreme Court has, as noted, demonstrated a preference for internal union procedures as an alternative to costly litigation, *Allen, supra*, 373 U.S. at 123, 83

---

**4.** The union procedure in *Abood* is described at 431 U.S. 240 n. 41, 97 S.Ct. 1782. The union initially calculates the proportion of political expenditures, but its determination is subject to review by an impartial board.

**5.** The procedure adopted by CWA is set out in a resolution of the Executive Board effective July 1, 1974, entitled "Partisan Politics—Policy," a copy of which is attached hereto as Appendix. The policy provides that any member or non-member covered by a union-security agreement who objects to "the expenditure of a portion of dues or agency fees for activities or causes primarily political in nature" is entitled to a refund. The Administrative Committee of the Executive Board determines the approximate proportion of dues or fees attributable to political activity. If the payor objects to the amount calculated by the Administrative Committee, he may appeal to the Executive Board of the Union. There is a further and final appeal to the Convention. There is no provision in the policy for review by an impartial body.

**6.** The defendants moved to dismiss the claims of those plaintiffs who have not invoked the CWA rebate procedure and to stay proceedings with respect to those who have invoked it. There is a factual dispute as to whether any of the plaintiffs invoked the procedure. Since this court is of the opinion that exhaustion of the union remedy will not be required in this case as a condition precedent to litigation, it is unnecessary to determine which, if any, of the plaintiffs invoked the procedure.

S.Ct. 1158, *Abood, supra,* 431 U.S. at 240, 97 S.Ct. 1782, it does not appear that a stay is "strictly required by any doctrine of exhaustion of remedies." *Id.* at 242, 97 S.Ct. at 1802. The Court in *Abood* counseled that exhaustion in that case might afford "a possible means of settling the dispute." [7]

A stay, generally speaking, is a matter of convenience, not of right, and may be granted or denied in the exercise of the sound discretion of the court. The grounds upon which a stay of proceedings may be granted or denied depend on the facts and circumstances in each particular case. *See generally* 1 C.J.S. Actions §§ 131–137. In this case, a stay pending exhaustion of the union rebate procedure would not be helpful in promoting the ultimate resolution of the controversy. It is extremely unlikely that exhaustion will substantially alter the positions of the parties. For one thing, it is not completely clear from the proceedings to date that the union's rebate is procedurally or substantively adequate. The plaintiffs will almost certainly be dissatisfied with the Union's determination of the amount of dues-equivalent payments to be refunded,[8] if for no other reason than that the CWA procedure, unlike the union's procedure in *Abood*, provides for no review by an impartial party. *See also, e. g.,* Plaintiffs' Offer of Proof, Court Paper No. 46, which details the numerous defects the plaintiffs expect to encounter in the rebate procedure. Since the court has already been called upon to determine the sufficiency of the rebate procedure, and not merely to review the calculations of an accountant, it appears that only delay will result from requiring the plaintiffs to negotiate all three levels of the CWA plan before challenging it. There may, of course, be cases in which exhaustion is appropriate, but this is not one of them.

Accordingly, for the reasons stated, defendant's motion to dismiss or in the alternative to stay these proceedings pending exhaustion of the internal union remedy will be denied.

■ The plaintiffs have moved for summary judgment on Count VI of the Complaint. This count seeks essentially a declaratory judgment that the defendants may not raise as an affirmative defense the fact that this litigation is financed in whole or in part by the National Right to Work Legal Defense Foundation, in possible contravention of 29 U.S.C. § 411(a)(4) (1970). It is sufficient to note that over the two-year history of this litigation, no defendant has ever raised this defense. It follows that there is no ripe "case or controversy" on this point, and it would exceed this court's power to issue the prayed-for declaration. *United Public Workers of America v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Accordingly, plaintiffs' motion for summary judgment will be denied.

It is this 12th day of January, 1979, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendant's motion to dismiss or in the alternative to stay these proceedings be, and the same hereby is, DENIED; and

---

7. This court notes that, on remand, the Michigan Court of Appeals, for reasons of its own, did not require exhaustion as a condition precedent to litigation. *Ball v. City of Detroit,* 84 Mich.App. 383, 269 N.W.2d 607 (1978).

8. In this case, certain, if not all of the plaintiffs directed form letters to the Union protesting the expenditure of their funds for non-collective bargaining purposes. In at least three cases, the Union recipient, Mr. James R. Pizzano, understood the purpose of the letters to be to invoke the rebate provision of the "Partisan Politics—Policy." Accordingly, the Union's accountant was directed to determine what percentage of the dues receipts for the fiscal year ending in March 1976 was attributable to "political and legislative programs." The accountant determined that the correct percentage was 5.78%, yielding a per capita refund of $2.95. *See* Affidavit of James R. Pizzano, attached to Defendant's Motion to Dismiss, Court Paper No. 36. The plaintiffs have already asserted that the Union's arithmetic is incorrect (although they deny that they invoked the procedure).

2. That plaintiffs' motion for summary judgment as to Count VI of the Complaint be, and the same hereby is, DENIED.

### APPENDIX

The following policy statement was read and discussed by the Board. It concerns members or non-members who may be covered by a collective bargaining agreement containing a "Union Shop" or "Agency Shop" provision and who may object to that portion of dues or agency fees which may be used for political activities.

### PARTISAN POLITICS—POLICY

Effective *July* 1, 1974, the following policy is hereby established:

1. Any member or nonmember who is covered by a collective bargaining agreement containing a "Union Shop" or "Agency Shop" provision shall have the right to object to the expenditure of a portion of dues or agency fees for activities or causes primarily political in nature, and shall be entitled to the refund of a portion of such dues under the terms, conditions and procedures contained in this statement of policy.

2. The Administrative Committee of the Executive Board shall determine the approximate annual proportion of dues or agency fees spent for activities or causes primarily political in nature as of March 31st of each year.

3. A member or nonmember may express objection to the Secretary-Treasurer of the Union by written notification by registered or certified mail. Such objection must be received by the Secretary-Treasurer (postmarked) during the first fourteen (14) days of Union membership or agency association or during fourteen (14) days following each anniversary of Union membership or agency association. Each such individual written objection will be only for the current year in which the objection is made. An objection may be continued from year to year by individual notifications, during each annual anniversary of membership or agency association and the following fourteen (14) days.

4. If the member or nonmember is not satisfied with the allocation determination of the Administrative Committee of the Executive Board, there shall be a right of appeal to the Executive Board of the Union. Such an appeal must be made in writing to the President of the Union by certified or registered mail and must be made within thirty (30) days from the date of notification or publication of the Administrative Committee's determination.

5. If the member or nonmember does not accept the decision of the Executive Board, there shall be a right of appeal to the Convention. Such appeal must be postmarked within fifteen (15) days of receipt of the decision of the Executive Board. Such notification shall be in writing to the President and shall be sent by registered or certified mail.

6. The portion of Union dues or agency fees to be refunded for policy purposes to an objector shall be based on the amount determined to be allocable by the Administrative Committee, or any amendment thereof on appeal. The rebate to the member or nonmember will be based on the annual dues received for the current year in which the objection is received.

Motion: Moved that the above statement be adopted.

Motion adopted
6/19/74