WHITE CLOUD EDUCATION ASSOCIATION v WHITE CLOUD
BOARD OF EDUCATION

Docket Nos. 45898, 46178. Submitted April 2, 1980, at Lansing.—
Decided November 4, 1980.

White Cloud Education Association brought suit in Newaygo
Circuit Court seeking to compel the Board of Education of the
White Cloud Public Schools to discharge William Jibson, a
tenured teacher, for failure either to become a member of the
Association or, in the alternative, to pay an agency shop fee
equivalent to the Association's dues as required by the collec-
tive bargaining agreement between the Association and the
Board as a condition of continued employment. The trial court,
Terrence R. Thomas, J., granted summary judgment for the
Association and the Board and Jibson appeal. *Held:*

1. The Michigan teacher tenure act, which states that a
tenured teacher may be discharged only for reasonable and just
cause and only after such charges, notice, hearing and determi-
nation thereof have occurred, has been superseded by the
public employment relations act (PERA), which authorizes the
collection of agency shop fees from nonunion members of a
collective bargaining group. Thus, the provisions of the teacher
tenure act are not applicable to the instant dispute.

2. Failure of the Board to hold a hearing on the nonpayment
of the fees prior to terminating Jibson's employment did not
constitute reversible error because Jibson admitted that he had
refused to pay the fees.

3. The trial court did not err in denying Jibson's request to

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 48 Am Jur 2d, Labor and Labor Relations §§ 16, 1190.
48A Am Jur 2d, Labor and Labor Relations § 1765.
Union security agreements in state public employment. 95 ALR3d
1102.
Union organization and activities of public employees. 3 ALR2d
1142.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1765.
[4-6] 48 Am Jur 2d, Labor and Labor Relations § 48.
[7] 66 Am Jur 2d, Restitution and Implied Contracts §§ 16, 24.
[8] 48A Am Jur 2d, Labor and Labor Relations § 1764.

have the disputed fees placed in escrow pending a determination of the amount applicable to collective bargaining and contract administration.

Affirmed.

M. J. Kelly, J., concurred but wrote to clarify that in the absence of a contract provision making the payment of an agency fee a condition of employment, or where a union does not want to initiate a dismissal hearing, there is a procedure under which it is possible for the union to institute a civil suit against a nonpaying teacher for recovery in *quantum meruit* for services provided.

## Opinion of the Court

1. Labor Relations — Public Employment Relations Act — Teachers' Tenure Act — Statutes.

   The provision of the public employment relations act which authorizes the payment of agency shop fees supersedes both the substantive and procedural protections embodied in the teachers' tenure act (MCL 38.71 *et seq.*, 423.210; MSA 15.1971 *et seq.*, 17.455[10]).

2. Labor Relations — Agency Shop Fees — Validity and Enforceability.

   A collective bargaining agreement which provides for the discharge of any employee who refuses to become a member of the union or, in the alternative, to pay agency shop fees is valid and enforceable.

3. Labor Relations — Due Process — Public Employment Relations Act — Agency Shop Clause — Nonpayment of Fees — Notice.

   The agency shop clause of the public employment relations act, in order to satisfy procedural due process, requires that a nonpaying employee be given notice of nonpayment of fees and a pretermination hearing wherein the sole issue is whether the recalcitrant employee paid the agency shop fees unless there is no factual dispute to be resolved as to the payment or nonpayment of the fees.

4. Constitutional Law — Labor Relations — Public Employees — Agency Shop Fees.

   Fundamental First Amendment rights guarantee that public employees cannot be compelled to pay agency shop fees which will be used to support ideological activities unrelated to collective bargaining.

5. CONSTITUTIONAL LAW — LABOR RELATIONS — DECLARATORY JUDG-
MENTS — AGENCY SHOP FEES — COURT RULES.

A public employee subject to the agency shop fee provision of the public employment relations act can be required to pay a disputed agency shop fee to his exclusive collective bargaining representative pending a determination of what portion of the fee is used for collective bargaining, contract administration and grievance adjustment because the First Amendment right of the employee not to be compelled to pay agency shop fees which will be used to support ideological activities unrelated to collective bargaining, and to which the employee objects, can be adequately safeguarded if the disputed fee is paid to the bargaining representative and the employee immediately files suit for a declaratory judgment to determine what portion of the fee the employee can be compelled to pay; this procedure allows the employee to vindicate his constitutional rights while at the same time allowing the union access to that portion of the fee which will be used for collective bargaining, contract administration and grievance adjustment (GCR 1963, 521).

6. LABOR RELATIONS — AGENCY SHOP FEES — PROPORTION OF FEES
USED FOR COLLECTIVE BARGAINING — BURDEN OF PROOF —
COURT RULES.

A collective bargaining representative, in a declaratory judgment action to determine what proportion of an agency shop fee is dedicated to ideological activities unrelated to collective bargaining, has the burden of establishing that proportion because it possesses the facts and records from which such proportion can be determined (GCR 1963, 521).

CONCURRENCE BY M. J. KELLY, J.

7. LABOR RELATIONS — UNIONS — NONUNION EMPLOYEES — ELECTION
OF REMEDIES — QUANTUM MERUIT.

*A civil action against a nonpaying employee for a* quantum meruit *recovery for services rendered may be brought by a union where there is an absence of a contract provision making an agency shop fee a condition of employment or where the collective bargaining unit does not want to initiate a dismissal hearing.*

8. LABOR RELATIONS — COLLECTIVE BARGAINING — NONUNION EM-
PLOYEES — LEGISLATIVE INTENT.

*The Legislature has manifested a clear intent to eliminate "free riders" from receiving benefits acquired in collective bargain-*

ing; "free riders" are those persons who do not help pay the cost of union support.

*Foster, Swift, Collins & Coey, P.C.* (by *James A. White* and *Michael J. Schmedlen),* for the White Cloud Education Association.

*Schmidt, Howlett, Van't Hof, Snell & Vana* (by *H. Edward Paul),* for the White Cloud Board of Education.

*Allaben, Massie, Vander Weyden & Timmer,* and *Raymond J. LaJeunesse, Jr.,* and *Bruce N. Cameron,* for William Jibson.

Before: BASHARA, P.J., and M. J. KELLY and D. R. FREEMAN,* JJ.

D. R. FREEMAN, J. Defendants appeal as of right from the trial court's order granting summary judgment to plaintiff on June 19, 1979, which provided that defendant Board of Education discharge intervenor-defendant Jibson for failure to pay the mandatory agency shop fee provided for in the collective bargaining agreement between the parties.

Defendant Board and plaintiff entered into a collective bargaining agreement for the 1977-1978 and 1978-1979 school years, requiring teachers to become members of the union or pay an agency shop fee equivalent to union dues as a condition of continued employment. When intervenor-defendant Jibson, a tenured teacher, refused to become a member of the union or pay the agency shop fee, the union asked the Board to hold a tenure hearing and dicharge him. Based upon the Michigan teachers' tenure act ("TTA"), 1967 PA 216 as

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

amended, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.,* the Board refused to honor the union's request. The union brought this suit demanding that intervenor-defendant Jibson be discharged for failure to pay the agency shop fee.

The critical issue in this case involves a conflict between the TTA, and the public employment relations act ("PERA"), 1947 PA 336, as amended, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* MCL 38.101; MSA 15.2001 provides that discharge of a tenured teacher "may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided". Jibson argues that nonpayment of an agency shop fee is not "reasonable and just cause" for discharge of a tenured teacher, and that he is thus protected from discharge for failing to pay the fee.

In conflict with Jibson's argument is section 10 of PERA, which provides as follows:

"Provided further, [t]hat nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section [eleven] [footnote omitted] to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative." MCL 423.210(1)(c); MSA 17.455(10)(1)(c).

Section 10 further provides that:

"It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, if such requirement is negotiated with the public employer, that all employees in the bargain-

ing unit shall share fairly in the financial support of their exclusive bargaining representative by paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative." MCL 423.210(2); MSA 17.455(10)(2).

This section was so amended by 1973 PA 25, following the Michigan Supreme Court's decision in *Smigel v Southgate Community School Dist,* 388 Mich 531, 543; 202 NW2d 305 (1972), that an agency shop provision requiring as a condition of employment that all employees either join the union and pay dues or pay the equivalent agency shop fee was repugnant on its face to the provisions of PERA. The United States Supreme Court has since upheld the validity of union shop clauses in the public employment sector. *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977).

In *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616, 629-630; 227 NW2d 736 (1975), the Michigan Supreme Court stated as follows with regard to conflicts between PERA and the TTA:

"This Court has consistently construed the PERA as the dominant law regulating public employee labor relations. In *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44; 214 NW2d 803 (1974), we held that residency and retirement benefits are mandatory subjects of collective bargaining under the PERA, although provisions of a city's ordinance and charter, promulgated under the home rule act, would otherwise govern. Earlier, in *Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973), this Court 'harmonized' the constitutional authority of the Regents to supervise the university and the authority of the Legislature to provide for the resolution of public employee disputes, holding that interns and

residents in the University of Michigan Hospital were entitled to engage in collective bargaining. In *Wayne County Civil Service Comm v Board of Supervisors,* 384 Mich 363, 374; 184 NW2d 201 (1971), this Court held that the original authority and duty of the Wayne County Civil Service Commission 'was diminished *pro tanto'* by the PERA 'to the extent of free administration of the latter'.

"The analysis is the same whether we label this reconciliation repeal by expression or by implication, *pro tanto* diminishing or harmonizing. The supremacy of the provisions of the PERA is predicated on the Constitution (Const 1963, art 4, sec 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations.

"The teachers' tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. The 1937 Legislature in enacting the teachers' tenure act could not have anticipated collective bargaining or meant to provide for the resolution of labor relations disputes in public employment. This Court's observation in *Wayne County Civil Service Comm, supra,* is pertinent: 'In [no] instance could collective bargaining by public employees have been in the minds of the people, or of the (1937) legislators. The thought of strikes by public employees was unheard of. The right of collective bargaining, applicable at the time to private employment, was then in comparative infancy and portended no suggestion that it eventually might enter the realm of *public* employment.' (Emphasis by the Court.)" (Footnotes omitted.)

In a more recent decision, this Court concluded that the PERA provision authorizing agency shop fees superseded both the substantive and procedural protections embodied in the TTA. *Detroit Board of Education v Parks,* 98 Mich App 22; 296 NW2d 815 (1980). The *Parks* Court found that a collective bargaining agreement providing for discharge of a nonpaying employee was valid and

enforceable, despite the TTA requirement of reasonable and just cause to terminate. The Court also held:

"Unlike section 6 of the PERA, which specifically superseded not only the substantive but also the procedural requirements of the Tenure Act with regard to teachers who are dismissed for striking, section 10 allows an agency shop agreement as a condition of employment but does not provide procedures for dismissal. In light of the legislative intent that the PERA occupy the field of labor relations in the public sector, however, it would be inappropriate to follow the procedures set forth in the Tenure Act." (Footnote omitted.)

Although the *Parks* Court rejected as inapplicable the hearing requirements of the TTA, it still found a pretermination hearing necessary to satisfy procedural due process. The sole issue at such a hearing is to be whether the recalcitrant employee paid the agency shop fee. The Court found that the Board failed to provide Parks with a hearing prior to termination. However, in a factual setting similar to the instant case, the *Parks* Court found the Board's failure to hold a hearing did not constitute reversible error:

"The agency shop clause itself does now and always has required notice of nonpayment of the fees and Parks received such notice, including notice of the possibility of discharge as a result. It would be pointless, however, to require that the Board now hold a hearing for Parks. She has already appealed her discharge to the Tenure Commission and we review its decision now. Furthermore, she has submitted an affidavit stating that she has not paid agency shop fees since 1973-74 and that she paid the fees that year 'under protest'. There is, therefore, no factual dispute to be resolved at a hearing and we hold that it is not necessary to hold one."

We find that the provisions of the TTA are not applicable to the instant dispute. We also find that employee Jibson's admitted refusal to pay requisite agency shop fees precludes the need to hold a hearing to determine the fact of payment. Therefore, the lower court did not err in ordering summary judgment in the plaintiff's favor.

Jibson also contests that aspect of the lower court's decision refusing his request to have the disputed fees placed in escrow pending a determination of the amount applicable to collective bargaining and contract administration. *Abood v Detroit Board of Education, supra.* In pertinent part, the circuit court's order provides:

"I[t is further ordered and adjudged], that if the Intervenor pays to the Plaintiff the amount of $231.20, which is sought by the Plaintiff as the appropriate amount of the agency shop fee, then this Court will, upon request by the Intervenor, determine the appropriate amount of the agency shop fee pursuant to *Abood v Detroit Board of Education,* 431 US 209 (1977), and Intervenor's request that such funds be placed in an escrow account pending such determination is denied."

Pursuant to the *Abood* decision, public employees may not be compelled to pay agency shop fees which will be used to support ideological activities unrelated to collective bargaining. Thus, Jibson has the right to challenge that portion of the agency shop fee which is used to support ideological activities to which he objects. See also, *Ball v Detroit,* 84 Mich App 383; 269 NW2d 607 (1978).

After the circuit court granted plaintiff's motion for summary judgment, the Board filed a motion for a new trial and amendment of the judgment and Jibson moved to intervene as a defendant. The

court granted Jibson's motion to intervene and agreed to grant a new trial if Jibson first paid the contested fee to the union. The motion was denied when Jibson refused to pay the fee to the union, offering instead to pay it into an escrow account pending the circuit court's determination of the amount thereof not used for ideological activities Jibson did not choose to support.

In *Ball v Detroit,* 84 Mich App 383, 397; 269 NW2d 607 (1978), this Court stated as follows with regard to the use of escrow accounts in cases such as this:

"The Supreme Court concluded the Michigan Court of Appeals was correct in denying the, 'broad injunctive relief requested.' *Abood, supra,* at 241 (emphasis supplied). However we agree with plaintiffs that allowing the union the use of funds prior to a judicial determination subjects nonmembers to the risk that their fees may be used, even temporarily, for activities to which they are opposed. Because fundamental First Amendment rights are at stake, we believe the proper solution is to require nonmembers to pay service fees into an escrow account. While we recognize this works somewhat of a hardship on the union because temporarily it will be unable to collect even the portion of service fees to which it is entitled, that hardship is outweighed by the possibility that First Amendment rights will be violated. Establishing a temporary escrow account is not the broad injunctive relief prohibited in *Abood.* Rather it is a temporary measure designed to ensure nonmembers pay their service fees or face dismissal and to ensure the union will have prompt access to the funds to which it is entitled after a judicial determination. Whatever remains in the escrow account shall be refunded to the objecting nonmembers."

Our ruling in *Ball* clearly accords paramount status to the employee's First Amendment rights vis-à-vis the union's right to that portion of the fee

which will be used for collective bargaining, contract administration and grievance adjustment. While we continue to adhere to that principle, we now believe that the employee's First Amendment rights can be adequately safeguarded if the disputed fee is paid to the union and the employee immediately files suit for declaratory judgment under GCR 1963, 521. That court rule provides for judicial declaration of "the rights and other legal relations of * * * interested part[ies]" and authorizes the circuit court to "order a speedy hearing of an action for declaratory relief" and to "advance [such hearing] on the calendar". In this manner, while the employee can quickly move for a resolution of the issue and a vindication of his constitutional rights, the union is not crippled by nonaccess to that portion of the fee which will be used for collective bargaining, contract administration and grievance adjustment. In the context of such an action for declaratory judgment the union shall have the burden of establishing the proportion of the agency shop fee which is dedicated to uses to which the employee does not object. *Railway Clerks v Allen,* 373 US 113, 122; 83 S Ct 1158, 1163; 10 L Ed 2d 235, 241 (1963). The union possesses the facts and records from which such proportion can be determined and it is only fair that the burden be imposed on the party who has access to that information.

The circuit court decision granting summary judgment to the plaintiff and directing defendant Board of Education to discharge Jibson for failure to pay agency shop fees is affirmed. Should Jibson decide to pay the fees prior to the entrance of a formal discharge order by the Board, he may initiate an action for declaratory judgment for the purpose noted in this opinion.

Affirmed.

BASHARA, P.J., concurred.

M. J. KELLY, J. *(concurring).* I concur in the majority's opinion, but write separately in an attempt to clarify the procedures to be followed when a teacher subject to an agency shop fee agreement refuses to pay the stipulated fee.

The majority's reference to the remedy of dismissal for nonpayment, established in *Detroit Board of Education v Parks,* 98 Mich App 22; 296 NW2d 815 (1980), addresses only the situation of a refusal to pay under a collective bargaining agreement requiring payment as a condition of employment. MCL 423.210(1); MSA 17.455(10)(1). However, in the absence of a contract provision making the fee a condition of employment (or where the union does not want to initiate a dismissal hearing) a second remedy is available, although not exactly ravishing.

The union could pursue recovery in a civil action brought against the nonpaying teacher. It has been held that "[w]hen a statute provides a beneficial right but no civil remedy for its securance, the common law on its own hook provides a remedy". See *B F Farnell Co v Monahan,* 377 Mich 552, 555; 141 NW2d 58 (1966). See also *Cort v Ash,* 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975), and the cases cited therein for a discussion of the four factors to be considered in determining whether a private remedy may apply to a statute not expressly providing one. The Legislature has manifested a clear intent to eliminate "free riders" from receiving benefits acquired in collective bargaining, without bearing the costs of union support. MCL 423.210; MSA 17.455(10). The consequent requirement that a nonunion employee be

liable in a civil action for payment of the agency shop fee merely recognizes the unions' right of recovery in *quantum meruit* for services provided. See *Detroit Board of Education v Parks, supra,* fn 15. See also, *Central Michigan University v U X* (Docket No. 77-1040, released August 1, 1977 [unreported]), a decision on petitioner's application for leave to appeal, recognizing the option of a civil suit for recovery. Thus, a union has a choice of remedies against a nonmember refusing to pay the agency shop fee. The union could notify the board of education that a nonmember has refused payment, thus requiring the board to initiate a dismissal hearing. The union could also institute a suit to recover the fees directly from the teacher refusing payment. Should a collective bargaining agreement require payment of agency shop fees without making the obligation a condition of employment, the union may still pursue its private remedy to recover the fee.