OPINION OF THE COURT
David 0. Boehm, J.
Plaintiffs, employees of the Churchville-Chili Central School District (School District), have commenced this action against the School District and the ChurchvilleChili Education Association (Association) to challenge the constitutionality of dues deductions from their salaries under the authority of section 208 (subd 3, par [b]) of the Civil Service Law. Plaintiffs and defendant Association, joined by the Attorney-General as intervenor (see CPLR 1012), each move for summary judgment.
The defendant Association is the exclusive bargaining representative of School District employees. Since October 14, 1977, defendant School District has, pursuant to its collective bargaining agreement with the Association, deducted a fee equal to the Association’s dues from the salaries of its nonunion employees and has transmitted the amounts so deducted to the Association. The plaintiffs are among such nonunion employees.
Such an arrangement is expressly authorized by section 208 (subd 3, par [b]) of the Civil Service Law, with the *937 qualification that such nonmember deductions are permissible only if the “employee organization * * * has established and maintained a procedure providing for the refund to an employee demanding the return [of] any part of an agency shop fee deduction which represents the employee’s pro rata share of expenditures by the organization in aid of activities or causes of a political or ideological nature only incidentally related to the terms and conditions of employment.”
The complaint alleges that the Association has, over plaintiffs’ objections, used their money for purposes other than collective bargaining, contract administration and grievance adjustment; that section 208 (subd 3, par [b]), by permitting such expenditures by the union, violates plaintiffs’ constitutional rights to freedom of expression and association, both on its face and as applied and asks for declaratory and injunctive relief as well as the restitution of such fees heretofore collected.
Plaintiffs’ motion for summary judgment is brought on the ground that section 208 (subd 3, par [b]) is, on its face, unconstitutional. Although they may be required to contribute to the Association’s collective bargaining activities, which benefits them as well as the members of the Association, plaintiffs argue, citing Abood v Detroit Bd. of Educ. (431 US 209), that they may not be compelled to contribute to any other union expenditures.[1] The following four defects in section 208 (subd 3, par [b]) are put forth.
(1) By allowing a deduction equal to the Association’s dues, the law permits more than plaintiffs’ pro rata share of collective bargaining expenses to be used, at least temporarily, for other purposes.
(2) The law enables plaintiffs’ money to be transmitted to the Association without first requiring it to demonstrate to a neutral tribunal what its legitimate collective bargaining expenses are so that the permissible share of plaintiffs’ *938 fees are deducted in a manner least restrictive of their rights.
(3) The standard by which the law measures the adequacy of a union’s refund procedure is too narrow, allowing the Association to retain and spend plaintiffs’ fees for impermissible purposes.
(4) The law permits unions to condition nonmember refunds upon continuing and costly dissents, instead of requiring that a dissent, once made, be honored until retracted.
As an alternative to declaring section 208 (subd 3, par [b]) unconstitutional, plaintiffs ask that it be construed so as to mandate procedures and standards which would correct the foregoing defects.
Defendant Association, joined by the Attorney-General, moves for summary judgment declaring the statute to be constitutional and dismissing the complaint.
It is clear that neither Abood v Detroit Bd. of Educ. (431 US 209, supra), nor any other authority cited by plaintiffs, compels the conclusion that section 208 (subd 3, par [b]) is constitutionally repugnant on its face.[2]
The facts in Abood (supra) are strikingly similar to the facts here. There a group of nonunion public school teachers challenged the constitutionality of a Michigan statute which permitted public employers to require as a condition of employment that all employees in the bargaining unit pay to the bargaining representative a service fee equal to the amount of dues paid by the members. The plaintiffs argued a violation of rights guaranteed by the Constitution because the fees they were compelled to pay were used by the union, over their objections, for purposes other than collective bargaining, including political, religious, charitable and recreational activities. Upon review of a motion addressed to the pleadings, the Michigan Court of Appeals sustained the validity of the statute and held that, regardless of whether or not plaintiffs’ allegations were true, they were nevertheless not entitled to restitution of any portion of the fees (60 Mich App 92).
*939 On appeal, the United States Supreme Court held that while Michigan could require its employees to contribute to the union for collective bargaining, contract administration and grievance adjustment, it could not compel them to subsidize the union’s “ideological activities * * * unrelated to collective bargaining” (431 US 209, supra). The court held that the plaintiffs had stated a cause of action under the Federal Constitution, and remanded the matter to the Michigan courts for trial or, in the alternative, deferral pending voluntary resort by the parties to a refund procedure (similar to that now required by section 208 [subd 3, par (b)] of the Civil Service Law) which the union had recently adopted. The court expressly declined, however, to pass upon the constitutionality of that procedure (431 US, at p 242, n 45).
With respect to plaintiffs’ first contention, it is clear that there is no constitutional infirmity in section 208 (subd 3, par [b])’s authorization of an agency shop fee equal to the Association’s dues. Twenty years before Abood (supra), the United States Supreme Court so held in Railway Employees’ Dept. v Hanson (351 US 225), a case in which the plaintiffs had alleged, but not yet proven, that their contributions, also equal to the union’s dues, were being used for noncollective bargaining purposes.[3] While recognizing that constitutional problems might well arise if assessments were imposed for purposes “not germane” to collective bargaining, the court refused to assume in the absence of evidence that any part of plaintiffs’ fees were used for impermissible purposes and reversed a judgment in plaintiffs’ favor.
Here, too, the plaintiffs claim that their fees are being used for impermissible purposes (an allegation the defendant Association denies in its answer). But, outside of proving a $2 assessment for the New York Education Association’s Political Action Committee, they have submitted nothing other than news articles and the conclusory assertions of their attorneys to support this claim. Dr. Edwin Vieira’s affidavit goes far toward demonstrating the *940 irrelevance of the Association’s Political Action Committee deduction to the terms and conditions of employment and it may raise questions of fact regarding the functions of the defendant Association’s State and National affiliates. Nevertheless, his assertions as to the political nature of the Churchville-Chili Education Association itself (apparently based upon a study of its various affiliates) are essentially legal conclusions which, however well argued, are unaccompanied by factual detail, are based upon inferences and evidence not before the court, and in fact, have apparently been rejected in at least one other case (see Knight v Minnesota Community Coll. Faculty Assn.,_F Supp_ [No. 4-74 Civ 659, US Dist Ct, Minn]). The present record is devoid of hard evidence showing how the defendant Association actually used plaintiffs’ agency shop fees or any other fees it collects.
Plaintiffs urge the court to assume that a significant amount of the Association’s dues revenue is spent on nonchargeable activities and, proceeding from that assumption, ask for a conclusion that section 208 (subd 3, par [b])’s authorization of fees equal to dues “assures” that the fees will be used at least temporarily for impermissible purposes. Their position is that it is not appropriate, without a supporting record, to assume that a union spends the majority of its money for collective bargaining purposes. Yet, such an assumption has been held to be the correct one. What the holding in Hanson (supra, reaffd in Abood v Detroit Bd. of Educ., 431 US 209, 230-233, supra), requires is the presumption that fees will be used only for permissible purposes. Accordingly, the exaction of a fee equal to dues is not unconstitutional per se.[4]
Plaintiffs’ next attack upon section 208 (subd 3, par [b])’s constitutionality is based upon its authorizing a fee deduction mechanism that gives the union temporary control *941 over the entire fee, including portions which may be refundable. Citing Abood (supra), they argue that any contribution they are compelled to make to the Association, even if for legitimate collective bargaining purposes, inhibits their First Amendment rights. Equating an agency shop fee deduction to a prior restraint upon speech, plaintiffs urge that the fee deduction procedure must be administered in a manner which is least restrictive of their rights, i.e., by depositing their fees with a neutral third party until the Association proves to a court, or to the New York Public Employment Relations Board, by clear and convincing evidence how much of the fee represents plaintiffs’ pro rata share of the collective bargaining expenses.
This argument, however, misconceives the nature of plaintiffs’ rights. In Machinists v Street (367 US 740), again in Railway Clerks v Allen (373 US 113) and in Abood v Detroit Bd. of Educ. (431 US 209, supra), the Supreme Court made clear that a dissenting nonunion employee is aggrieved not by the union’s receipt of his money, but only by its use for impermissible purposes (e.g., Machinists v Street, supra, pp 771-772). Until a prima facie showing of unauthorized use is made there is no reason to deny the Association control over the full fee (see Railway Employees’ Dept. v Hanson, 351 US 225, supra).
Moreover, Street (supra), Allen (supra) and Abood (supra) hold that where an impermissible use has been shown, a court may enjoin the union from spending objectors’ fees for such purpose and may direct the restitution of their pro rata share of such expenditure together with a reduction in future assessments; however, the court may not enjoin altogether the collection of the objectors’ fees (see Abood v Detroit Bd. of Educ., supra, pp 237-241; Railway Clerks v Allen, supra, p 122; accord White Cloud Educ. Assn. v White Cloud Bd. of Educ., 101 Mich App 309; Ellis v Brotherhood of Ry., Airline & S. S. Clerks, Frgt. Handlers, Express & Sta. Employees, 685 F2d 1065; see, generally, The Supreme Court 1976 Term, 91 Harv L Rev 1, 188-198). Yet the escrow requirement plaintiffs seek to engraft upon the statute would amount to just such a forbidden injunction (see Browne v Milwaukee Bd. of School Directors, 83 Wis 2d 316, 335-340a, supra).
*942 Decisions which have imposed an escrow requirement are either distinguishable from this case or, if not distinguishable, are unpersuasive. Robinson v State of New Jersey (547 F Supp 1297), for instance, dealt with a statute which expressly excepted certain union lobbying expenses from any refund requirement. The court there directed that the objectors’ fees should be temporarily held in escrow, but only after an examination “of the voluminous factual record” revealed that the rebate procedure in issue had operated in practice to deny objectors their rights under Abood (431 US 209). Furthermore, that escrow order was imposed, not as a perceived absolute requirement, but only as a temporary measure designed to preserve plaintiffs’ rights until the abuses that were shown to have evolved under the New Jersey statute were cured.
School Committee v Greenfield Educ. Assn. (385 Mass 70) is less easily distinguished except, perhaps, upon the basis that it dealt with a developed factual record. The court there held, under statutory schemes similar to section 208 (subd 3, par [b]) of the Civil Service Law, that an objector’s agency fees must be held in escrow pending judicial resolution of a dispute as to the union’s legitimate share. It concluded {supra, p_) “that the statutory right of the organization to the permissible amount is outweighed by the potential that the impermissible amounts will be used, even temporarily, in violation of the dissenting teachers’ First Amendment rights.”
However, this view appears to be irreconcilable with the Supreme Court’s clear mandate that a bargaining representative not be denied, even temporarily, the contribution to which it is entitled from every employee it represents (accord Ellis v Brotherhood of Ry., Airline & S. S. Clerks, Frgt. Handlers, Express & Sta. Employees, 685 F2d 1065, supra; Railway Clerks v Allen, 373 US 113, supra; and see, particularly, White Cloud Educ. Assn. v White Cloud Bd. of Educ., 101 Mich App 309, supra, which so construed that court’s earlier decision in Ball v City of Detroit, 84 Mich App 383).
We do not read the recent decision of the United States Court of Appeals for the Third Circuit in Galda v Bloustein (686 F2d 159) as compelling a different result. In that case *943 the mandatory university student fee collected to support the New Jersey Public Interest Research Group, albeit refundable, was attacked as unconstitutional because it was not a First Amendment interference which was, applying the definition used by the United States Supreme Court, “constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress” (Abood v Detroit Bd. of Educ., 431 US 209, 222, supra). The court remanded for a hearing to determine whether the fee was financing a forum for the exchange of diverse student views, thereby justifying the infringement upon the First Amendment rights of plaintiffs, or whether it was being unconstitutionally exacted to finance what was only a political action group.
Plaintiffs’ third argument is that, to permit the Association to use their fees while they are relegated to the union’s internal rebate procedure, impermissibly imposes the burden of proof upon them rather than upon the union where it belongs (see Railway Clerks v Allen, 373 US 113, 122, supra). Citing Blount v Rizzi (400 US 410), they assert that they should not be obliged to pay any fee to the Association until there has been a judicial determination of its legitimate share.
Blount v Rizzi {supra) held simply that Congress could not authorize an administrative censor to impound mail he considered obscene unless it also provided for expeditious judicial review of the censor’s determination. However, the postmaster’s interest in curbing obscenity and the Association’s interest in receiving financial support from all whom it represents are not analogous, for only the latter has been found to be compelling enough to justify its infringement upon protected expression (Abood v Detroit Bd. of Educ., supra, pp 222-223).
Nor can it be determined, on the present record, whether the Association’s rebate procedure impermissibly shifts the burden of proof to the plaintiffs. In Robinson v State of New Jersey (547 F Supp 1297, 1301, supra), for instance, there were extensive affidavits which left “little, if any dispute” as to the operation and effectiveness of the union rebate procedures there questioned. Only after ex *944 amining the voluminous factual record was the Robinson court able to conclude that the rebate system “places such heavy burdens on the objecting non-member and takes such an inordinately long time to complete, that in reality it does not constitute a system by which a non-member can recover that portion of the fees paid by him which is used for impermissible purposes” {supra, p 1322).
Here, in contrast, the record not only lacks evidence that plaintiffs’ funds are improperly used, but it is also devoid of proof as to the efficacy of the Association’s rebate procedures. Although plaintiffs have submitted documents defining the rebate procedures of the defendant Association and those of its State and National affiliates, they have produced no evidence to show that resort to those procedures has been or will be unsatisfactory, either in the manner of its operation or in the amount of the refund it produces.
Section 208 (subd 3, par [b]) itself neither expressly limits dissenting nonmembers to an internal union remedy (cf. School Committee v Greenfield Educ. Assn., 385 Mass 70, supra) nor purports to shift the burden of justification from the defendant Association to plaintiffs. Moreover, that burden of justification is a condition precedent to the use, not the receipt, of plaintiffs’ funds (see Machinists v Street, 367 US 740, 771-772, supra). Section 208 (subd 3, par [b]) expressly authorizes only the transmittal of plaintiffs’ agency shop fees to the Association, but is silent as to when and for what purposes the union may use the fees so advanced. That the statutory directive is capable of being administered in an unlawful manner is not sufficient to render it unconstitutional (Matter of Bergerman v Murphy, 278 App Div 388, 393, affd 303 NY 762), and plaintiffs’ motion upon this ground is also denied.
Plaintiffs next argue section 208 (subd 3, par [b])’s unconstitutionality because it requires the Association to refund only that portion of plaintiffs’ fees which represents their pro rata share of “expenditures by the organization in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment.” Arguing that this phrase omits numerous causes to which they may not constitutionally be compelled *945 to contribute, plaintiffs contend that the statute, if it is not to be declared void, must be construed to require a refund of all but plaintiffs’ pro rata share of the expenses of collective bargaining, contract administration and grievance adjustment.
This challenge, too, must be rejected as premature. Faced with the same argument in Abood (431 US 209, supra), the Supreme Court expressly declined to resolve, without a factual record, the dividing line “between collective-bargaining activities, for which contributions may be compelled, and ideological activities unrelated to collective bargaining, for which such compulsion is prohibited.” (431 US, at p 236.)
Plaintiffs’ final argument for declaring the agency shop statute void is that it unconstitutionally permits the Association to require plaintiffs to register their objections annually with the union through a cumbersome and costly union-operated procedure. It is a sufficient answer that the statute itself requires neither repeated objections nor that the refund procedure it mandates be administered by the union (see School Committee v Greenfield Educ. Assn., 385 Mass 70, _, supra).
Moreover, even if the statute were construed to permit the Association to administer its refund procedure, this alone would not be a constitutional infirmity. Plaintiffs’ theory that their freedom of association is violated by any compelled contact with the Association is unsupported by statute or case law, and is rejected.
In conclusion, it is apparent that plaintiffs, on this motion, have largely mistaken the claimed unconstitutional application of a valid statute for a situation involving a statute unconstitutional on its face (cf. Warner v Board of Educ., 99 Misc 2d 251). Preliminary to any relief there must be a showing of how the Association spends the money it collects. Then, and only then, would the trial court be in a position to determine whether the other questions here raised require resolution and, if so, to proceed accordingly.
Contrary to the view of the defendant Association, the complaint fairly raises questions of fact requiring a trial. *946 Accordingly, both motions for summary judgment are denied.

. Although the complaint asserts that section 208 (subd 3, par [b]) of the Civil Service Law violates both the United States and New York State Constitutions, plaintiffs have based their arguments upon Federal law. The defendant Association also relies upon cases construing the United States Constitution but contends that, as applied to this case, the First Amendment and the applicable provisions of the New York Constitution are essentially identical.

. It is therefore unnecessary to address the Attorney-General’s contention that McAulay v Board of Educ. (76 AD2d 779) is dispositive of the questions presented here.

. In fact, the statute in Hanson (supra) permitted agreements which required all employees in a bargaining unit to become members of the union that represented the unit.

. We do not now decide whether, after a demonstration of impermissible use, a continued exaction by the employer of fees equal to dues would be constitutional. Even if not, however, section 208 (subd 3, par [b]) might still be construed to save its constitutionality, just as the statute at issue in Hanson (351 US 225, supra) was later salvaged by the Supreme Court in Machinists v Street (367 US 740) (see, also, Browne v Milwaukee Bd. of School Directors, 83 Wis 2d 316; School Committee v Greenfield Educ. Assn., 385 Mass 70).