KEMPNER v LOCAL 2077, AFL-CIO

Docket No. 63491. Submitted January 18, 1983, at Detroit.—Decided
June 8, 1983. Leave to appeal applied for.

Christine D'Alleva was an employee of the City of Dearborn.
During the period in which she was employed, the collective-
bargaining agreement between Local 2077, AFL-CIO, Metropoli-
tan Council 25, AFSCME, and the city required members of a
bargaining unit to pay either union dues or equivalent service
fees as a condition of continued employment. Ms. D'Alleva did
not fulfill either alternative obligation. Consequently, the union
informed her of her failure to comply. As was her prerogative,
Ms. D'Alleva requested a breakdown of the use made by the
union of the service fees collected. The union answered her
request, but she declined to use the union's internal rebate
procedures. When Ms. D'Alleva persisted in her refusal to pay,
the union requested the city to terminate her employment.
Eventually, the union offered to accept a service fee reduced by
the approximate amount (6%) which the union acknowledged
was used for political or ideological purposes unrelated to
collective bargaining. Ms. D'Alleva still refused to make any
payment, except into an escrow account, pending an adjudica-
tion as to the proper allocation of the service fee. Thereafter,
David E. Kempner filed an unfair labor practice charge on
behalf of Ms. D'Alleva with the Employment Relations Com-
mission alleging that the union had unlawfully demanded her
discharge for failure to pay agency shop fees because the union
had not established by an adjudication that portion of the
agency fee to which it was constitutionally entitled. The hear-
ing referee recommended dismissal of the charge and the
commission agreed, holding that the union's demands for her
dismissal are not unlawful. Kempner appealed. *Held:*

1. The commission did not use an improper standard to
determine the proper percentage of the gross agency shop fee

References for Points in Headnotes
[1, 2] 48 Am Jur 2d, Labor and Labor Relations § 16.
    Validity and construction of "right-to-work" laws. 92 ALR2d 598.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1795.
[3] 48 Am Jur 2d, Labor and Labor Relations § 1190.

that could be extracted from an objecting employee without violating the employee's First Amendment rights. The commission specifically declined to determine what percentage the union could collect, holding that such a determination would be premature.

2. The commission's refusal to allow D'Alleva to tender the service fee into escrow pending an adjudication of the precise amount chargeable was not improper. A public employee subject to the agency shop fee provision of the public employment relations act can be required to pay a disputed agency shop fee to his exclusive collective-bargaining representative pending a determination of what portion of the fee is used for collective bargaining, contract administration and grievance adjustment because the First Amendment right of the employee not to be compelled to pay agency shop fees which will be used to support ideological activities unrelated to collective bargaining and to which the employee objects can be adequately safeguarded if the disputed fee is paid to the bargaining representative and the employee immediately files suit for a declaratory judgment to determine what portion of the fee the employee can be compelled to pay.

3. An exhaustion of internal union remedies requirement before a public employee may request the Employment Relations Commission to allocate the percentage of the union dues amount a nonmember may be required to pay the union under an agency shop arrangement is constitutionally permissible.

4. The Employment Relations Commission may sanction the discharge of employees for failure to pay, except into escrow, an agency shop fee which has not been adjudicated before the commission or a court to be a constitutionally permissible fee.

Affirmed.

1. CONSTITUTIONAL LAW — LABOR RELATIONS — DECLARATORY JUDGMENTS — AGENCY SHOPS.

A public employee subject to the agency shop fee provision of the public employment relations act can be required to pay a disputed agency shop fee to his exclusive collective-bargaining representative pending a determination of what portion of the fee is used for collective bargaining, contract administration and grievance adjustment because the First Amendment right of the employee not to be compelled to pay agency shop fees which will be used to support ideological activities unrelated to collective bargaining and to which the employee objects can be adequately safeguarded if the disputed fee is paid to the bargaining representative and the employee immediately files suit

for a declaratory judgment to determine what portion of the fee the employee can be compelled to pay; this procedure allows the employee to vindicate his constitutional rights while at the same time allowing the union access to that portion of the fee which will be used for collective bargaining, contract administration and grievance adjustment.

2. LABOR RELATIONS — CONSTITUTIONAL LAW — PUBLIC EMPLOYEES — AGENCY SHOPS — EXHAUSTION OF REMEDIES.

An exhaustion of internal union remedies requirement before a public employee may request the Employment Relations Commission to allocate the percentage of the union dues amount a nonmember may be required to pay the union under an agency shop arrangement is constitutionally permissible.

3. LABOR RELATIONS — AGENCY SHOPS — REMEDIES.

The Employment Relations Commission may sanction the discharge of employees for failure to pay, except into escrow, an agency shop fee which has not been adjudicated before the commission or a court to be a constitutionally permissible fee.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *David E. Kempner*), and *Milton L. Chappell,* for plaintiff.

*Maurer, Kalls & Webb* (by *George M. Maurer, Jr.),* for defendant.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs* and *Mary Ellen Gurewitz),* for Amici Curiae, Michigan State AFL-CIO and Detroit Federation of Teachers.

Before: T. M. BURNS, P.J., and R. M. MAHER and HOOD, JJ.

PER CURIAM. Plaintiff appeals from an order of the Michigan Employment Relations Commission (MERC) dismissing an unfair labor practice charge.

Christine D'Alleva was an employee of the City of Dearborn. During the period in which she was

employed, the collective-bargaining agreement between defendant unions (hereinafter union) and the City of Dearborn required members of a bargaining unit to pay either union dues or equivalent service fees as a condition of continued employment, pursuant to subd 10(1)(c) of the public employment relations act (PERA), MCL 423.210(1)(c); MSA 17.455(10)(1)(c).

Ms. D'Alleva did not fulfill either alternative obligation. Consequently, the union informed her of her failure to comply with MCL 423.210(1)(c); MSA 17.455(10)(1)(c). As was her prerogative, Ms. D'Alleva requested a breakdown of the use made by the union of the sevice fees collected. The union answered her request, but she declined to use the union's internal rebate procedures.

When Ms. D'Alleva persisted in her refusal to pay, the union requested the city to terminate her employment. Eventually, the union offered to accept a service fee reduced by the approximate amount (6%) which the union acknowledged was used for political or ideological purposes unrelated to collective bargaining. Ms. D'Alleva still refused to make any payment, except into an escrow account, pending an adjudication as to the proper allocation of the service fee. Thereafter, plaintiff filed an unfair labor practice charge on behalf of Ms. D'Alleva, alleging that the union had unlawfully demanded her discharge for failure to pay agency shop fees because the union had not established by an adjudication that portion of the agency fee to which it was constitutionally entitled under *Abood v Detroit Bd of Ed,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977).

The hearing officer recommended dismissal of the charge and MERC affirmed. The decision and order of MERC stated:

"The Administrative Law Judge held that in order for a Union to lawfully demand the discharge of a non-member for failure to pay an agency fee the Union must, after the non-member has given notice to the Union of the fact of her objection, provide the objecting non-member with a figure allowing him to reduce the amount of his monthly fee by the percentage of the Union's annual budget spent for ideological or political purposes unrelated to collective bargaining. In making this computation the Union must use its own definition of ideological or political purpose as long as that definition is a good faith application of current case law. After receiving this information from the Union, the objecting non-member must commence paying a reduced fee, consisting of the normal agency fee less the percentage given him by the Union. Until the Union provides the objecting non-member with this figure, he need pay nothing * * *. If the objecting non-member refuses to pay the reduced fee after the Union has provided him with the figure discussed above, the Union may then demand his discharge. The objecting non-member may, of course, if dissatisfied with the figure given by the Union, pursue other remedies to obtain a final allocation of the fee. He must pay the reduced fee pending this litigation, however."

Finding that Ms. D'Alleva had declined the option of paying the fee reduced by the amount the union claimed to have spent on ideological and political activities and that she had refused to pay any portion of her fee except into escrow, MERC agreed with the hearing officer's conclusion "that Respondents' continuing demand for her discharge was not unlawful under PERA". MERC further agreed with the hearing officer's dismissal of the charge because Ms. D'Alleva refused to pay the adjusted fee pending exhaustion of the internal rebate and appeals procedures provided by the union.

Plaintiff appeals as of right alleging several

legal errors by MERC in its construction of MCL 423.210(1)(c); MSA 17.455(10)(1)(c) which states, in pertinent part:

"It shall be unlawful for a public employer or an officer or agent of a public employer * * * (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization: Provided further, That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 to require as a condition of employment that all employees in the bargaining unit pay to the exclusive representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative."

## I

Plaintiff first contends that MERC used the wrong standard to determine the proper percentage of the gross agency shop fee that could be extracted from an objecting employee without violating his First Amendment rights. MERC, however, specifically declined to determine what percentage of the fee the union could permissibly collect under prevailing constitutional law. Such a determination would be premature, MERC ruled, because the plaintiff had not yet exhausted the union's internal appeal procedures for challenging the union's allocation of the fee. Thus, any standard characterized by MERC as the proper one to be applied was not essential to its decision and not reviewable by this Court.

Nevertheless, we wish to comment briefly on the issue raised by plaintiff. The standard plaintiff attributes to MERC is that a union may collect

fees supporting union activities except "ideological activities unrelated to collective bargaining". This standard, the plaintiff argues, is broader than the one endorsed by *Abood.* According to plaintiff, *Abood* allows only the use of agency service fees "to finance expenditures * * * for collective bargaining, contract administration, and grievance adjustment". 431 US 225-226.

We believe that plaintiff has read *Abood* too narrowly. First, in the passage from *Abood* relied upon by plaintiff, the Court intended only to give three examples of union activities which employees may be compelled to support. The Court did not purport to limit this sort of activity to those three examples. Second, other language in *Abood* suggests that MERC's alleged interpretation of that case is correct. At one point in the opinion, the Court reflected: "There will, of course, be difficult problems in drawing lines between collective-bargaining activities, for which contributions may be compelled, and *ideological activities unrelated to collective bargaining, for which such compulsion is prohibited."* 431 US 236. (Emphasis supplied.) In this passage, the Court comes closer to announcing a standard than in the language seized upon by plaintiff. Thus, without subscribing to it ourselves, we believe the interpretation of *Abood* attributed to MERC by plaintiff is a reasonable construction of that case.[1]

---

[1] It should be noted that the United States Supreme Court's decision in *Abood* appears to be based, in part, on *Brotherhood of Railway & Steamship Clerks v Allen,* 373 US 113; 83 S Ct 1158; 10 L Ed 2d 235 (1963), and *Railway Employees' Dep't v Hanson,* 351 US 225; 76 S Ct 714; 100 L Ed 1112 (1956).

Faced with a similar situation, the Ninth Circuit Court of Appeals recently concluded: "Based on our reading of *Hanson, Allen,* and *Abood,* however, we believe that the relevant inquiry is whether a particular challenged expenditure is germane to the union's work in the realm of collective bargaining. This formulation respects and protects dissenters' rights but does not needlessly weaken the union,

## II

Plaintiff further argues that MERC's refusal to permit Ms. D'Alleva to tender the service fee into an escrow account pending a determination of the precise amount chargeable resulted in, at the least, a temporary infringement of her First Amendment rights.

The propriety of an escrow remedy under these circumstances is the subject of a conflict between different panels of this Court. Compare: *White Cloud Education Ass'n v White Cloud Bd of Ed,* 101 Mich App 309; 300 NW2d 551 (1980), and *Ball v Detroit,* 84 Mich App 383; 269 NW2d 607 (1978). In *Ball, supra,* an escrow account was permitted; in *White Cloud, supra,* it was not.[2]

We adopt the conclusion of *White Cloud, supra,*

whose viability is necessary to secure and maintain industrial peace." *Ellis v Brotherhood of Railway, Airline & Steamship Clerks,* 685 F2d 1065, 1072 (CA 9, 1982). *Cf. White Cloud Education Ass'n v White Cloud Bd of Ed,* 101 Mich App 309, 318-319; 300 NW2d 551 (1980); *Eastern Michigan University Chapter of the American Ass'n of University Professors v Morgan,* 100 Mich App 219, 230; 298 NW2d 886 (1980), *lv den* 411 Mich 955 (1981).

In any event, until an allocation is actually made, it is difficult to perceive how Ms. D'Alleva is prejudiced—regardless of the standard used.

[2] In *Ball, supra,* p 397, this Court held:

"The Supreme Court concluded the Michigan Court of Appeals was correct in denying the, 'broad injunctive relief requested.' *Abood, supra,* p 241 (emphasis supplied). However we agree with plaintiffs that allowing the union the use of funds prior to a judicial determination subjects nonmembers to the risk that their fees may be used, even temporarily, for activities to which they are opposed. Because fundamental First Amendment rights are at stake, we believe the proper solution is to require nonmembers to pay service fees into an escrow account. While we recognize this works somewhat of a hardship on the union because temporarily it will be unable to collect even the portion of service fees to which it is entitled, that hardship is outweighed by the possibility that First Amendment rights will be violated."

On the other hand, in *White Cloud, supra,* pp 318-319, this Court cited *Ball* and concluded:

"Our ruling in *Ball* clearly accords paramount status to the employee's First Amendment rights vis-à-vis the union's right to that portion

that escrow accounts are *not* permitted, as more fully reflective of the United States Supreme Court's decision in *Abood.* Citing its own precedents of *International Ass'n of Machinists v Street,* 367 US 740; 81 S Ct 1784; 6 L Ed 2d 1141 (1961), and *Brotherhood of Railway & Steamship Clerks v Allen,* 373 US 113; 83 S Ct 1158; 10 L Ed 2d 235 (1963), the Supreme Court concluded:

"In determining what remedy will be appropriate if the appellants prove their allegations, the objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object thereto *without restricting the Union's ability to require every employee to contribute to the cost of collective bargaining activities."* 431 US 237. (Emphasis added.)

We hold that an escrow remedy unduly restricts "the union's ability to require every employee to contribute to the cost of collective bargaining activities", especially in view of the alternative remedies set forth in *White Cloud, supra,* for, although Ms. D'Alleva would part with her money, the

of the fee which will be used for collective bargaining, contract administration and grievance adjustment. While we continue to adhere to that principle, we now believe that the employee's First Amendment rights can be adequately safeguarded if the disputed fee is paid to the union and the employee immediately files suit for declaratory judgment under GCR 1963, 521. That court rule provides for judicial declaration of 'the rights and other legal relations of * * * interested part[ies]' and authorizes the circuit court to 'order a speedy hearing of an action for declaratory relief' and to 'advance [such hearing] on the calendar'. In this manner, while the employee can quickly move for a resolution of the issue and a vindication of his constitutional rights, the union is not crippled by nonaccess to that portion of the fee which will be used for collective bargaining, contract administration and grievance adjustment. In the context of such an action for declaratory judgment the union shall have the burden of establishing the proportion of the agency shop fee which is dedicated to uses to which the employee does not object. *Railway Clerks v Allen,* 373 US 113, 122; 83 S Ct 1158, 1163; 10 L Ed 2d 235, 241 (1963)."

union would not receive it. The union would nevertheless be obligated to fulfill its ongoing statutory responsibilities to the entire bargaining unit—including the charging party-appellant—without corresponding financial sustenance.

Furthermore, in *Street, supra,* and *Allen, supra,* the United States Supreme Court emphasized that there should be no *temporary* injunctive relief which interferes with the flow of funds to the union. In *Street, supra,* the Court held: "Nor would it be proper to issue an interim or temporary blanket injunction of this character pending a final adjudication." 367 US 772. Similarly, in *Allen, supra,* the Supreme Court ruled:

"It also follows from *Street* that the Superior Court erred in granting respondent's interim relief against compliance with financial obligations imposed by the Agreement. As a result of this relief none of the respondents has taken any steps toward compliance since the suit was instituted. We think that lest the important functions of labor organizations under the Railway Labor Act be unduly impaired, *dissenting employees* (at least in the absence of special circumstances not shown here) *can be entitled to no relief until final judgment in their favor is entered."* 373 US 120. (Emphasis added.)

## III

Plaintiff also attacks MERC's exhaustion of remedies requirement. MERC held that an "objecting non-member must in this case exhaust the internal appeal procedures provided by [the Union] for challenging its allocation of the fee before requesting allocation from the Commission". Plaintiff argues that the exhaustion requirement is unconstitutional because it forces nonmembers to defer vindication of constitutional claims to internal

processes of an organization to which they do not belong.

We do not agree. Plaintiff's arguments overlook the *encouragement* given to such processes by the United States Supreme Court. For example, in *Brotherhood of Railway & Steamship Clerks v Allen, supra,* the Supreme Court held:

"The difficulties in judicially administered relief, although not insurmountable * * *, should, we think, encourage petitioner unions to consider the adoption by their membership of some voluntary plan by which dissenters would be afforded an internal union remedy." 373 US 122.

That suggestion in *Allen, supra,* was echoed by the United States Supreme Court in *Abood, supra:*

"In view of the newly adopted Union internal remedy, it may be appropriate under Michigan law, even if not strictly required by any doctrine of exhaustion of remedies, to defer further judicial proceedings pending the voluntary utilization by the parties of that internal remedy as a possible means of settling the dispute." 431 US 242.

In light of those expressions by the United States Supreme Court, we are compelled to conclude that a required exhaustion of internal union remedies by nonmembers as to agency fee protests is constitutionally permissible.[3] Agency fee objec-

---

[3] To the extent that *Ball* suggests otherwise, we respectfully decline to follow that holding. See, generally, *Eastern Michigan University Chapter of the American Ass'n of University Professors v Morgan, supra,* p 226:

"However, in view of the well-established authority of a bargaining agent to bind all members of the bargaining unit, the significance of defendant's nonunion status is unpersuasive. Nonunion members are as much 'parties' to a bargaining agreement as union members, with the same rights and duties. In fact, they *may not* be treated differently. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967)."

tions are by definition made by nonmembers, and their objections as public employees are invariably asserted in constitutional terms. Yet, it was precisely with those considerations in mind that the United States Supreme Court encouraged affected unions to provide internal review procedures.

## IV

Finally, plaintiff submits that MERC "applied PERA in an unconstitutional manner by sanctioning the discharge of objecting employees for failing to pay, except into escrow, an agency shop fee which has not been adjudicated before [MERC] or a court of general jurisdiction to be the constitutionally permissible fee".

This contention merely restates plaintiff's previous arguments and is without merit. The decision below manifests a faithful adherence to the balancing process exemplified in *Abood*. See, also, MCL 423.210(2); MSA 17.455(10)(2).

Affirmed. No costs, a question of statutory construction being involved.

See, also, *Detroit Bd of Ed v Parks*, 98 Mich App 22; 296 NW2d 815 (1980).